32

**ORIGINAL**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DARON CALDWELL,**

                    Plaintiff,

-vs-

**CITY OF DETROIT, a Municipal Corporation,**
**ELLA BULLY-CUMMINGS, Chief of Police,**
**Deputy Chief HAROLD CURETON,**
**Commander CRAIG SWARTZ, Detroit Police Officer**
**MOISES JIMENEZ, Detroit Police Officer DERRICK THOMAS,**
**Detroit Police Officer KENNETH GARDNER,**
**Detroit Police Officer DAVID ANDERSON,**
**Detroit Police Officer DARRELL JONES,**
**Detroit Police Officer KEITH MARSHALL,**
**Detroit Police Officer M. SEAGRAM,**
**Detroit Police Officer G. PRZYBYLA,**
**Detroit Police Officer K. MILLER,**
**Detroit Police Officer A. JOHNSON,**
**Detroit Police Officer CRAIG STEWART,**
**Sergeant B. HIGGINS, and other**
**JOHN DOE POLICE OFFICERS,** Jointly and Severally,

                    Defendants.

Case No: 04-CV-74998
HON. VICTORIA A. ROBERTS
Magistrate Judge Virginia M. Morgan

# FILED

JUL - 8 2005

CLERK'S OFFICE, DETROIT-PSG
U.S. DISTRICT COURT

_____/

| | |
|---|---|
| **MARLON BLAKE EVANS (P49541)**<br>**Marlon Blake Evans & Associates**<br>Attorney for Plaintiff<br>535 Griswold, Suite 1630<br>Detroit, MI  48226<br>(313) 962-2335 | **KRYSTAL A. CRITTENDON (P49981)**<br>**City of Detroit Law Department**<br>Attorney for Defendants<br>1650 First National Building<br>Detroit, MI  48226<br>(313) 237-3018 |

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**NOW COME** Defendants, **CITY OF DETROIT, Detroit Chief of Police ELLA BULLY-**

**CUMMINGS and the DETROIT POLICE OFFICERS (identified in caption),** by and through

their attorney, **KRYSTAL A. CRITTENDON,** and hereby move this Honorable Court to dismiss

and/or for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)6 and 56 for the following reasons:

    1.     This lawsuit is on record in the United States District Court for the Eastern District of Michigan;

    2.     Plaintiff brought this lawsuit for damages arising out of alleged constitutional deprivations suffered when he was arrested by City of Detroit Police Officers. Plaintiff sues the City of Detroit, Detroit Police Department (hereafter, "DPD") Police Chief Ella Bully-Cummings and several police officers for tort damages and pursuant to 42 USC §1983 for alleged violations of the United States Constitution. (See Exhibit A - Complaint);

    3.     The underlying facts surrounding Plaintiff's arrest are as follows:

        a.     On June 23, 2004, the City of Detroit hosted the Freedom Festival Fireworks in downtown Detroit;

        b.     At approximately 10:15 p.m., someone began discharging a firearm near Hart Plaza;

        c.     When the shooting ceased, it was determined that nine individuals had been shot;

        d.     Several witnesses, including the victims, were identified and questioned by Detroit Police Officers;

        e.     The City of Detroit Police Department initiated a police investigation;

        f.     A number of tips were called into the Detroit Police Department by the public concerning possible suspects. During the investigation, an anonymous telephone tip was received by the Detroit Police Department, in which the tipster advised that Plaintiff, Daron Caldwell, might be a person involved in the Hart Plaza shooting;

        g.     On June 24, 2004, City of Detroit Police Officers Augustus Davis, Anthony Johnson, Kenneth Johnson and Rufus Stewart were assigned to the DPD Violent Crime Task Force. The officers received information as to Mr. Caldwell's address and established fixed surveillance. At approximately 5:15

p.m. the officers observed Plaintiff at his home and followed him to a location. When he exited his vehicle, Plaintiff was approached by the officers, advised as to why he was being stopped and consented to being conveyed to the Homicide Section of DPD for an interview. (See Exhibit B - PCR's of Violent Crimes Task Force members);

h.    On June 24, 2994, a photograph show-up was conducted by Officer Moises Jimenez. Two witnesses from the night of the shooting, Aaron Edmondson and Christopher Thackaberry, were shown an array of six photographs, including one of Plaintiff Daron Caldwell, whose photograph was the second photograph in the array. (See Exhibit C - photograph array). These two witnesses selected Plaintiff when asked if they identified the shooter from Hart Plaza and indicated the following:

    i.    Aaron Edmondson: "That is the gut that was shooting."

    ii.    Christopher Thackaberry: "I would say it's #2, but it was dark, but that would be him, he was backing away." (See Exhibit D - Show-up & Photo Identification Records of Edmondson & Thackaberry);

i.    Officer Jimenez also conducted a live show-up with witness Doria Jackson, who positively identified Plaintiff as being present at the fireworks shooting. She did not see Plaintiff discharge a firearm, but stated that when she saw him get "up off the ground, I saw a gun where he was laying and he ran." (See Exhibit D - Show-up & Photo Identification Record of Jackson);

j.    Other witnesses were also questioned during the investigation. Some of the individuals stated that they had not seen the shooter; some stated that they had not seen the shooter sufficiently to provide a description or pick out in a line-up; others gave varying descriptions of the shooter related to his attire, height and skin complexion;

h.    On June 24, 2004, an Investigator's Report/Warrant Request was prepared Officer Jimenez, presented to the Wayne County Prosecutor's Office and issued by the Thirty-Sixth District Court. Plaintiff was charged with the following offenses: Assault with Intent to Commit Murder; Felon in Possession of a Firearm; and Felony Firearm. The Warrant Request contained the names of *all* witnesses to the incident, both potentially *inculpatory* and *exculpatory,* and the DPD Homicide file, which included the witness statements of all witnesses, was made available to the Wayne County Prosecutor's Office. (See Exhibit E - Investigator's Report/Warrant Request and Supplement);

i.     On July 7, 2004, a preliminary examination was held at Thirty-Sixth District Court before Judge Miriam B. Martin-Clark. Nine witnesses testified at the preliminary examination and at its conclusion, Judge Martin-Clark determined that probable cause existed to believe that crimes had been committed and that Plaintiff had committed those crimes. In doing so, Judge Martin-Clark acknowledged the following: "several witnesses were not clear about whom they saw or whether they saw anyone. And, there was some inconsistent testimony regarding whether Mr. Caldwell was that person." She went on to conclude, however, that "(T)he Court is persuaded by the fact that at least two witnesses positively identified Mr. Caldwell as the shooter. There were two witnesses who indicated he was not the shooter." (See Exhibit F - Preliminary Examination transcript, pp. 197, 198);

j.     On October 4, 2002, Wayne County Prosecutor Kym L. Worthy moved to dismiss all charges against Plaintiff, *without prejudice*. Forensic evidence had been received back from the forensic laboratory relating to DNA evidence found at the scene of the shooting which suggested that two weapons had been used during the fireworks shooting. In moving to dismiss the charges, Ms. Worthy noted that the DNA evidence did "not eliminate Mr. Caldwell's participation in the shootings, or his known presence att he crime scene." (See Exhibit G - Prosecutor's Fireworks Shooter Press Conference statement);

4.     Plaintiff has now filed a ten-count civil Complaint against the City of Detroit, Detroit Police Chief Ella Bully-Cummings, the Officer in Charge of the Investigation (Defendant Moises Jimenez), thirteen other police department employees and John Doe Police Officers;

5.     Plaintiff asserts many allegations of alleged malfeasance in his thirty-six (36) page, one-hundred twenty (120) paragraph Complaint. The summation of his Complaint, however, is that "the arrest and incarceration of Plaintiff Daron Caldwell was a direct result of the inaccurate and false misrepresentation and fraud by Officer Jimenez and other Detroit police officers who acted in concert with Officer Jimenez." (Exh. A - para. 52);

6.     Plaintiff's ten-count Complaint alleges the following theories of liability: **Count I** - False Arrest; **Count II** - False Imprisonment; **Count III** - Gross Negligence; **Count IV**- Defamation;

**Count V**- Conspiracy to Violate State and Federal Law in Violation of 42 USC § 1983; **Count VI** -Malicious Prosecution; **Count VII** - Constitutional Violations for Illegal Search Under 42 USC Sec. 1983 and State Law as to Defendant Police Officers; **Count VIII** - Constitutional Violations for the Illegal Act of Fabricating Evidence Under 42 USC Sec. 1983 and State Law as to Defendant Police Officer; **Count IX** - Constitutional Violation for the Illegal Act of Defamation of Character Under 42 USC Sec. 1983 and State Law as to Defendant Police Officer; and **Count X** - Constitutional Violations Under 42 USC Sec. 1983 as to Defendant City of Detroit;

7.      Pursuant to 42 U.S.C. § 1983, a police officer who acts in good faith in performing his job duties is entitled to qualified immunity from the imposition of liability;

8.      A governmental officer must violate an individual's clearly established constitutional rights before the defense of qualified immunity is unavailable to the official, so long as the officer believed his or her conduct did not violate those rights and the officer's belief was objectively reasonable. Davis v Sherer, 468 U.S. 183, reh den 468 U.S. 1226 (1984);

9.      Additionally, where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent 42 U.S.C. § 1983 action. Allen v McCurry, 449 U.S. 90 (1980);

10.     Also, where there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person committed it, the failure to make a further investigation does not negate probable cause. Koski v Vohs, 426 Mich. 424 (1986); Clanan v Nushzno, 261 Mich. 423 (1933);

11.     In the case at hand, Plaintiff has not established that the individually-named

defendants violated any of his constitutionally protected rights; Police Officer Moises Jimenez turned over all witness statements, both inculpatory and exculpatory, to the Wayne County Prosecutor's Office. The Assistant Prosecuting Attorney presented the request for a warrant to a District Court Judge, who signed it. Plaintiff was afforded a preliminary examination, at which he was represented by counsel and had a full and fair opportunity to examine and cross-examine the witnesses. The Court determined that probable cause existed and Plaintiff was bound over for trial;

12.     As the individually-named defendants, including Officer Jimenez, did not violate any of Plaintiff's constitutionally protected rights, then the officers are qualifiedly immune from the imposition of liability on Counts I through IV of Plaintiff's Complaint;

13.     Moreover, with respect to Count X, which seeks to impose liability against the City of Detroit for alleged constitutional violations pursuant to 42 USC §1983, a governmental body cannot be held liable merely because it employs a tortfeasor. Monell v Dept. of Social Services, 436 U.S. 658 (1978);

14.     A governmental agency, such as the City of Detroit, may be held liable for the violation of an individual's constitutionally protected rights only when the agency, acting through the execution of its policies or practices directly inflicts the injury. Monell v Dept. of Social Services, 436 U.S. 658 (1978);

15.     In the instant case, since Plaintiff has failed to identify any unconstitutional customs, policies or practices of the City of Detroit which caused any injury, then Defendant City is not liable to Plaintiff for any constitutional deprivations pursuant to 42 U.S.C. § 1983;

16.     FURTHERMORE, Counts I through IV of Plaintiff's Complaint allege that liability should be imposed upon the defendant police officers on state tort theories of liability. Plaintiff

cannot prevail on any of these claims because, as discussed above, probable cause existed for his arrest;

17. With the exception of Defendant Jimenez, Plaintiff fails to state a claim against the defendant police officers;

18. Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for summary judgment if an opposing party has failed to state a claim upon which relief can be granted;

19. Federal Rule of Civil Procedure 56(b) provides that a "party whom a claim, counterclaim, or cross-claim is asserted...... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.";

20. Federal Rule of Civil Procedure 56(c) provides that the judgment sought shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law;

21. For the foregoing reasons, all Defendants move for summary judgment.

**WHEREFORE,** predicated upon the facts presented and the authorities cited above, Defendants respectfully request the court dismiss this action, with prejudice, for the reasons detailed above.

Respectfully submitted,

**KRYSTAL A. CRITTENDON (P49981)**
Assistant Corporation Counsel
CITY OF DETROIT LAW DEPARTMENT
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018

DATED:      June 30, 2005

## INDEX OF AUTHORITIES

Adickes v S.H. Kress & Co., 398 U.S. 144 (1970) — 16

Ahlers v Schebil, 188 F.3d 365 (6th Cir. 1999) — 17, 19

Allen v McCurry, 449 U.S. 90 (1980) — 17

Anderson v Creighton, 483 US 635(1987) on remd 724 F.Supp 654 (D. Minn 1989) — 7

Anderson v Liberty Lobby, 477 U.S. 242 (1986) — 3

Barneir v Szentmiklosi, 810 F.Supp 594 (ED Mich 1987) — 15

Bennett v City of Sildell, 735 F.2d 861 (5th Cir. 1984) and 472 U.S. 1016 (1985) — 15

Boyle v Burke, 925 F.2d 497 (1st Cir. 1991) — 7

Canton v Harris, 498 U.S. 378 (1989) — 15, 16

City of Canton v Harris, 498 U.S. 376 (1989) — 16

Collins v Harker Heights, 503 U.S. 115 (1992) — 15

Coogan v Wixom, 820 F.2d 170 (1987) — 17, 18, 19

Davis v Sherer, 468 U.S. 183, reh den 468 U.S. 1226(1984) — 7

Fluellen v US Dept of Justice Drug Enforcement Admin., 816 F.Supp 1206 (E.D. Mich. 1993) — 16

Foster v Walsh, 864 F.2d 416 (6th Cir. 1988) — 16

Gardenhire v Schubert, 20 F.3d 303 (6th Cir. 2000) — 18

German v Killeen, 495 F.Supp. 822 (D. Mich. 1980) — 2

Gonzales v Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993) — 16

Hiland Dairy Co. v Kroger Co., 402 F.2d 968 (8th Cir 1968), cert. denied, 395 U.S. 961 — 2

Hinchman v Moore, 312 F.3d 198 (6th Cir. 2002) — 17

Hope v Pelzer, 536 U.S. 730 (2002)                                                    7

Hopkins v Stice, 916 F.2d 1029 (5th Cir. 1990)                                        18

Hurlman v Rice, 927 F.2d 75 (2nd Cir. 1991)                                           17

Jaroslawicz v Seedman, 528 F.2d 727 (2d Cir. 1975)                                    12

Koski v Vohs, 426 Mich. 424 (1986)                                                    18

Laise v City of Utica, No. 96-40232, 1997 US Dist Lexis 10267
        (E.D. Mich, July 14, 1997)                                                    16

Meredith v Hardy, 554 F2d 764 (5th Cir. 1977)                                         3

Michigan Hospital Association v Dept. of Social Svcs., 738 F.Supp. 1080
        (D. Mich 1990)                                                                2

Monell v Dept of Social Svcs., 436 U.S. 685 (1978)                                    15, 16

Oklahoma v Tuttle, 471 U.S. 808 (1985)                                                15

Pfannstiel v Marion, 918 F2d 1178 (5th Cir. 1990)                                     7

Street v J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989)                           3

Thorsted v Kelly, 858 F.2d 571 (9th Cir. 1988)                                        8

Vakilian v Shaw, 335 F.3d 509 (6th Cir. 2003)                                         17

Walker Distributing Co. v Lucky Lager Brewing, 323 F.2d (9th Cir. 1963)               2

Webster v Houston, 735 F.2d 838 (5th Cir. 1984)                                       15

Wilson v Russo, 212 F.3d 781 (3d Cir. 2000)                                           17

Federal Rules of Civil Procedure 12(B)(6), 56(b) and 56(c)                            2, 3

MCLA §691.1407                                                                        19, 20

42 USC §1983                                                                          15, 17

# TABLE OF CONTENTS

Defendants' Motion for Summary Judgment

Defendant's Brief in Support of Motion for Summary Judgment     1

Statement of Issues Presented     1

The FRCP 12(B)(6), 56(b) and 56(c) Predicates     2

Statement of Material Facts     3

Analysis and Application of Law

|      |                                              |     |
|------|----------------------------------------------|-----|
| I.   | Constitutional Claims - Defendant Police Officers | 7  |
| II.  | Constitutional Claims - City of Detroit      | 15  |
| III. | Preclusion of Relitigation of § 1983 Claim   | 17  |
| IV   | State Tort Claims                            | 19  |

Conclusion     20

Relief Requested     20

## <u>INDEX OF EXHIBITS</u>

EXHIBIT A   -   Plaintiff's Complaint

EXHIBIT B   -   Preliminary Complaint Records of Violent Crimes Task Force members

EXHIBIT C   -   Photograph array

EXHIBIT D   -   Show-Up & Photo Identification Records of Aaron Edmondson, Christopher Thackaberry and Doria Jackson

EXHIBIT E   -   Investigator's Report/Warrant Request

EXHIBIT F   -   Preliminary Examination Transcript

EXHIBIT G   -   Prosecutor's Fireworks Shooter Press Conference statement

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, **CITY OF DETROIT**, Detroit Chief of Police **ELLA BULLY-**

**CUMMINGS and the DETROIT POLICE OFFICERS (identified in caption)**, by and through

their attorney, KRYSTAL A. CRITTENDON, and for their Brief in Support of their Motion to

Dismiss and/or for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(b)6 and 56,

submit the following:

### Statement of Issues

Pursuant to 42 U.S.C. § 1983, a police officer who acts in good faith in performing his job duties is entitled to qualified immunity from the imposition of liability. A governmental officer must violate an individual's clearly established constitutional rights before the defense of qualified immunity is unavailable to the official, so long as the officer believed his or her conduct did not violate those rights and the officer's belief was objectively reasonable. Plaintiff has not established that the individually-named defendant Police Officers violated any clearly established constitutional rights. In the absence of such a showing, can the defendant Police officers held liable for alleged constitutional deprivations or are they qualifiedly immune from the imposition of liability pursuant to 42 U.S.C. § 1983?

A governmental agency, such as the City of Detroit, may be held liable for the deprivation of an individual's federal constitutional rights only where, through the implementation of the agency's policies, customs, or practices, the agency directly causes such deprivation. In the absence of any evidence establishing the existence of a City policy, custom, or practice causally related to an alleged deprivation, do Plaintiff's federal constitutional claims fail?

Federal precedents hold that where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent 42 U.S.C. § 1983 action. If a defendant is afforded a full and fair opportunity to challenge the existence of probable cause at a preliminary hearing and do so, may he later initiate a § 1983 civil action and relitigate the issue of the existence of probable

cause for his arrest?

State law mandates that a plaintiff establish that a defendant engaged in wrongdoing to prevail in a civil action on state tort theories of liability such as False Arrest, False Imprisonment, Gross Negligence and Defamation. Additionally, the Governmental Immunity Act, at MCL 691.1707(5) provides that the highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative, or executive authority. If a plaintiff cannot establish tortious conduct on behalf of a defendant and is suing the highest appointed official of a governmental agency who was acting within the scope of her executive authority, may the plaintiff still maintain the tort action?

## Authority
## The FRCP 12(b)(6) and 56 Predicates

Any pleading which sets forth a claim for relief may be challenged by a Rule 12(b)(6) motion. Walker Distributing Co. v Lucky Lager Brewing, 323 F.2d (9th Cir. 1963).   Such a motion tests the legal sufficiency of the pleading. German v Killeen, 495 F.Supp. 822 (D.Mich 1980). Consequently, the court must limit its inquiry to the pleading alone. Michigan Hospital Association v Department of Social Services, 738 F.Supp. 1080 (D.Mich. 1990). Rule 12(b)(6) motions serve a useful purpose in disposing of legal issues with a minimum of time and expense to the parties. Hiland Dairy Co. v Kroger Co., 402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961.

In accordance with FRCP 56, any party may move for summary judgement on the ground there is no genuine issue of fact, and when as a consequence, judgment is proper as a matter of law. Various matters in addition to the pleadings may be considered in connection with an FRCP 56 summary judgment motion.   Such matters may include affidavits, depositions, answers to interrogatories, and admissions, and oral testimony.  Federal Rule of Civil Procedure 56(c), 56(e) and 43(e).

In deciding an FRCP 56 motion, the court must concern itself solely with the existence of any genuine issue of material fact, and must view the pleadings, the supporting matters, and all reasonable inference drawn therefrom in the light most favorable to the non-moving party. Jaroslawicz v Seedman, 528 F.2d 727 (2d Cir. 1975). Consequently, when the pleadings, the supporting matters, and reasonable inferences demonstrate a material factual dispute, summary judgment is inappropriate. Meredith v Hardy, 554 F.2d 764 (5th Cir. 1977). Not every issue of fact or conflicting inference, however, presents a genuine issue of material fact requiring denial of an FRCP 56 summary judgment motion. Anderson v Liberty Lobby, 477 U.S. 242 (1986). Instead, the substantive law governing the case will determine what issues are material. Street v J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989). The party opposing an FRCP 56 motion must also present more than a mere scintilla of affirmative evidence to establish a material factual dispute. Street v J.C. Bradford & Co., Id. A simple showing of some degree of metaphysical doubt regarding the material facts is insufficient. Street v J.C. Bradford & Co., Id.

## Statement of Material Facts

On June 23, 2004, the City of Detroit hosted the Freedom Festival Fireworks in downtown Detroit. At approximately 10:15 p.m., someone began discharging a firearm near Hart Plaza. When the shooting ceased, it was determined that nine individuals had been shot. Several witnesses, including the victims, were identified and questioned by Detroit Police Officers. The City of Detroit Police Department initiated a police investigation. A number of tips were called into the Detroit Police Department by the public concerning possible suspects. During the investigation, an anonymous telephone tip was received by the Detroit Police Department, in which the tipster advised that Plaintiff, Daron Caldwell, might be a person involved in the Hart Plaza shooting.

On June 24, 2004, City of Detroit Police Officers Augustus Davis, Anthony Johnson, Kenneth Johnson and Rufus Stewart were assigned to the DPD Violent Crime Task Force. The officers received information as to Mr. Caldwell's address and established fixed surveillance. At approximately 5:15 p.m. the officers observed Plaintiff at his home and followed him to a location. When he exited his vehicle, Plaintiff was approached by the officers, advised as to why he was being stopped and consented to being conveyed to the Homicide Section of DPD for an interview. (See Exhibit B - PCR's of Violent Crimes Task Force members). On that same date, a photograph show-up was conducted by Officer Moises Jimenez. Two witnesses from the night of the shooting, Aaron Edmondson and Christopher Thackaberry, were shown an array of six photographs, including one of Plaintiff Daron Caldwell, whose photograph was the second photograph displayed. (See Exhibit C - photograph array). These two witnesses selected Plaintiff's photograph from the array when asked if they identified the shooter from Hart Plaza. When shown a photograph array which included a photograph of Daron Caldwell, witness Aaron Edmondson pointed out Plaintiff and stated, "That is the gut that was shooting." When witness Christopher Thackaberry was shown the same photograph array, he also pointed out Plaintiff and stated, "I would say it's #2 (Plaintiff), but it was dark, but that would be him, he was backing away." (See Exhibit D - Show-up & Photo Identification Records of Edmondson & Thackaberry).

Officer Jimenez also conducted a live show-up with witness Doria Jackson, who positively identified Plaintiff as being present at the fireworks shooting. She did not see Plaintiff discharge a firearm, but stated that when she saw him get "up off the ground, I saw a gun where he was laying and he ran." (See Exhibit D - Show-up & Photo Identification Record of Jackson). Other witnesses were also questioned during the investigation. Some of the individuals stated that they had not seen

the shooter; some stated that they had not seen the shooter sufficiently to provide a description or pick out in a line-up; others gave varying descriptions of the shooter related to his attire, height and skin complexion.

An Investigator's Report/Warrant Request was prepared by Officer Jimenez, presented to the Wayne County Prosecutor's Office and issued by the Thirty-Sixth District Court. Plaintiff was charged with the following offenses: Assault with Intent to Commit Murder; Felon in Possession of a Firearm; and Felony Firearm. The Warrant Request contained the names of *all* witnesses to the incident, both potentially *inculpatory* and *exculpatory,* and the DPD Homicide file, which included the witness statements of all witnesses, was made available to the Wayne County Prosecutor's Office. (See Exhibit E - Investigator's Report/Warrant Request and Supplement).

On July 7, 2004, a preliminary examination was held at Thirty-Sixth District Court before Judge Miriam B. Martin-Clark. Nine witnesses testified at the preliminary examination and at its conclusion, Judge Martin-Clark determined that probable cause existed to believe that crimes had been committed and that Plaintiff had committed those crimes. In doing so, Judge Martin-Clark acknowledged the following: "several witnesses were not clear about whom they saw or whether they saw anyone. And, there was some inconsistent testimony regarding whether Mr. Caldwell was that person." She went on to conclude, however, that "(T)he Court is persuaded by the fact that at least two witnesses positively identified Mr. Caldwell as the shooter. There were two witnesses who indicated he was not the shooter." (See Exhibit F - Preliminary Examination transcript, pp. 197, 198).

On October 4, 2002, Wayne County Prosecutor Kym L. Worthy moved to dismiss all charges against Plaintiff, *without prejudice.* Forensic evidence had been received back from the forensic

laboratory relating to DNA evidence found at the scene of the shooting which suggested that two weapons had been used during the fireworks shooting. In moving to dismiss the charges, Ms. Worthy noted that the DNA evidence did "not eliminate Mr. Caldwell's participation in the shootings, or his known presence att he crime scene." (See Exhibit G - Prosecutor's Fireworks Shooter Press Conference statement).

Plaintiff has now filed a ten-count civil Complaint against the City of Detroit, Detroit Police Chief Ella Bully-Cummings, the Officer in Charge of the Investigation (Defendant Moises Jimenez), thirteen other police department employees and John Doe Police Officers. Plaintiff asserts many allegations of alleged malfeasance in his thirty-six (36) page, one-hundred twenty (120) paragraph Complaint. The summation of his Complaint, however, is that "the arrest and incarceration of Plaintiff Daron Caldwell was a direct result of the inaccurate and false misrepresentation and fraud by Officer Jimenez and other Detroit police officers who acted in concert with Officer Jimenez." (Exh. A - para. 52).

Plaintiff's ten-count Complaint alleges the following theories of liability: **Count I** - False Arrest; **Count II** - False Imprisonment; **Count III** - Gross Negligence; **Count IV**- Defamation; **Count V**- Conspiracy to Violate State and Federal Law in Violation of 42 USC § 1983; **Count VI** -Malicious Prosecution; **Count VII** - Constitutional Violations for Illegal Search Under 42 USC Sec. 1983 and State Law as to Defendant Police Officers; **Count VIII** - Constitutional Violations for the Illegal Act of Fabricating Evidence Under 42 USC Sec. 1983 and State Law as to Defendant Police Officer; **Count IX** - Constitutional Violation for the Illegal Act of Defamation of Character Under 42 USC Sec. 1983 and State Law as to Defendant Police Officer; and **Count X** - Constitutional Violations Under 42 USC Sec. 1983 as to Defendant City of Detroit. For the following reasons,

Defendants City of Detroit, Police Chief Ella Bully-Cummings and the individually-named defendant Police Officers submit that they are entitled to summary judgment on all claims.

### Argument

### I. Plaintiff Has Not Established That Any Constitutional Violations Occurred for Which Defendants are Liable Pursuant to 42 USC § 1983

**A .** **Defendant Police Officers.** When a governmental officer violates an individual's *clearly established* constitutional rights, the defense of qualified immunity is available if (1) the officer believed his or her conduct did not violate those rights and (2) the officer's belief was objectively reasonable. Davis v Sherer, 468 U.S. 183, reh den 468 U.S. 1226(1984); Hope v Pelzer, 536 U.S. 730 (2002). The objective reasonableness of an official's action is determined by the law existing at the time of the conduct in question. Anderson v Creighton, 483 U.S. 635 (1987), on remd 724 F.Supp 654 (D. Minn. 1989). Whether an official's belief is objectively reasonable depends on the facts of the particular case. Hurlman v Rice, 927 F.2d 75 (2nd Cir. 1991). Specifically, the officer's conduct under the existing circumstances is measured against the knowledge of a reasonable officer acting in similar circumstances. Boyle v Burke, 925 F.2d 497 (1st Cir. 1991). Qualified immunity is available if a reasonable officer would be uncertain regarding the manner in which the law applies to the particular facts with which he or she is confronted. Hopkins v Stice, 916 F.2d 1029 (5th Cir. 1990). Similarly, if reasonable officers could disagree regarding the lawfulness of a particular act, the defense of qualified immunity is appropriate. Pfannstiel v Marion, 918 F.2d 1178 (5th Cir. 1990). Since the objective reasonableness of an official's conduct determines his or her entitlement to qualified immunity, subjective factors and surrounding circumstances generally are not relevant to the determination. Davis v Sherer, supra. Whether the official's conduct conforms to the objective

7

reasonableness standard may be established as a matter of law when there is no genuine issue of fact regarding the official's conduct. Thorsted v Kelly, 858 F.2d 571 (9th Cir. 1988).

In the case at hand, Counts V through IX of Plaintiff's Complaint are directed against the individually-named defendants. Plaintiff has filed a voluminous Complaint in this action which contains repeated charges of malfeasance against Defendants. Repeatedly, Plaintiff alleges that Defendants, especially Defendant Jimenez, "fabricated" of "manufactured" evidence in the Investigator's Report/Warrant Request which created the probable cause upon which Plaintiff was arrested, charged and incarcerated. Plaintiff's Complaint is replete with references to alleged "intentional lies," "false statements" and instances of ignored exculpatory evidence by the police officers. Plaintiff complains that Defendants were "so eager" to complete the investigation that they ignored "numerous eyewitnesses as set forth who described the firework perpetrator as someone other than Daron Caldwell." (Exh. A - para. 24). These allegations are vehemently denied by Defendants as blatantly untrue; in fact, Defendants included the identify of the witnesses on the Warrant Request and made their statements available to the Prosecutor's Office. More importantly, these allegations are irrelevant for purposes of this motion. It is clear from a review of the relevant case law and the evidence, including the witness statements of the witnesses and preliminary examination transcript, that probable cause existed for Plaintiff's arrest and detention and that no constitutional violations occurred in this matter.

Plaintiff complains that Officer Jimenez included statements in the Warrant Request which were untrue, "specifically paragraphs in the report referencing (that) witnesses identified Daron Caldwell as the shooter. . ." (Exh. A - para. 16). Defendants concede that of the many witnesses listed by Officer Jimenez on the Investigator's Report/Warrant Request, only three identified Daron

Caldwell in a live line-up or photograph show-up. As stated above, witnesses Aaron Edmondson and Christopher Thackaberry selected Plaintiff in a photo show-up and indicated that he was the person who committed the shootings at Hart Plaza. (Exh. C). Mr. Thackaberry claims to have seen the shooting and also testified at the preliminary examination. He testified that on the night of the shooting, he was taken down police headquarters, shown a photo array containing six photographs and asked if could identify the shooter. He was asked the following at the preliminary hearing by the Assistant Prosecuting Attorney (hereafter, "APA") and answered:

> **Q:** **Did the police ever set down a series of photographs and ask you to look at that and ask you to tell them whether you recognized the shooter or not?**
>
> **A:** **Yes.**
>
> **Q:** **Did that happen?**
>
> **A:** **Yes.**
>
> **Q:** **Okay.  And did that happen?**
>
> **A:** **That happened the evening following the shooting when I was at the hospital?**
>
> **Q:** **And, did you pick out the shooter?**
>
> **A:** **I don't know if he was the shooter.**  (See Exhibit F - Preliminary Examination transcript, pp. 66, 67).

A long exchange between the APA and defense counsel, Marlon Blake Evans, then ensued, after which the following testimony was given by Mr. Thackaberry:

> **Q:** **Okay.  And, at that photo array were they asking you to identify the person that was the shooter?**
>
> **A:** **Yes.**

Q:   Okay.  And, in response to them asking you to identify the person who was the shooter, did you in fact pick out No. 2?

A:   Yes.

Q:   So, you identify him as the shooter to the police.  Is that correct?

A:   Yes, well, I told them that I seen that person.

Q:   Okay.   But, at that point you knew they were asking you about the shooter?

A:   Well, I told them when they asked me, I said you know, I mean it was dark and I didn't get, you know, I was looking straight at him, but when I made the police report that night I couldn't really remember too much about him or anything that night.  And, when they showed me No. 2 was the one, I mean I had seen that person before.

Q:   Right.  But, they asked you to identify the shooter, correct?

A:   Yes.

Q:   And, you did identify him as the shooter?

A:   Yes.  (Exh. F - pp. 70, 71).

Upon cross-examination by Mr. Evans, Mr. Thackaberry established that the officers who showed him the photographs exercised great caution and took great care not to influence the identification process.  He testified:

Q:   And, the composite that they showed you did they take you away from the crowd and allow you to look at those photos?

A:   Yes, I was off.  There was another table sitting there and they told me, you know, look at them all and if you have to look away, watch TV for a second, whatever, look at them again, you know, make sure you're taking your time and you're seeing that you make the right choice. (Exh. E - p. 78).

Then, on redirect, Mr. Thackaberry was asked and answered:

Q:     And, lastly, when you were asked to pick out the shooter they didn't tell you you had to pick out anybody.  Is that correct?

A:     No, they said, if he's not there, he's not there.

Q:     They didn't put any pressure on you?

A:     No, no.

Q:     And, not withstanding that fact you still picked out the person?

A:     Yes.  (Exh. F - pp. 79, 80).

Doria Jackson also testified at the preliminary examination.  Officer Jimenez had conducted a live show-up with her and had positively identified Plaintiff as being present at the fireworks shooting.  She did not see Plaintiff discharge a firearm, but had stated that when she saw him get "up off the ground, I saw a gun where he was laying and he ran."  (Exh.  C).  At the preliminary examination, Ms. Jackson testified consistently with the statement she had previously given.  She testified that on the night in question, she heard a noise, observed people running and then saw a male laying on a blanket she had positioned near Hart Plaza:  She testified:

Q:     And, when you saw him get up and walk away did you notice something immediately in the area where he was?

A:     Yes.

Q:     What did you notice?

A:     There was a gun right by the blanket.

Q:     Okay.  And how close was it to him?

A:     Well, I couldn't see the gun until he got up.

Q:     You couldn't see the gun until he got up.  Is it your belief or observation that he was on the gun?

**A:**     **Yes.** (Exh. F - p-. 30, 31).

Ms. Jackson pointed to Plaintiff in the courtroom when asked if she saw the person who had fallen

onto her blanket. (Exh. F - pp. 31, 32). She testified that she never saw the gun in Plaintiff's hand,

but near where he had fallen onto her blanket and only after he got up. (Exh. A - pp. 30-32). She

admitted at the examination that she had picked Plaintiff out of the police line-up as the person she

had seen fall onto her blanket. (Exh. E - p. 32). She also testified that she remembered Plaintiff's

face because he looked like a professional basketball player she had seen before. (Exh. F - p. 33).

Other witnesses also testified at the preliminary examination. Some of the individuals stated

that they had not seen the shooter; some stated that they had not seen the shooter sufficiently to

provide a description or pick out in a line-up; others gave varying descriptions of the attire, height,

skin complexion of the shooter. A total of nine witnesses testified.

At the conclusion of the preliminary examination, Judge Martin-Clark determined that

probable cause existed to bind Plaintiff over. In doing so, Judge Martin-Clark acknowledged that

there was conflicting testimony concerning whether Plaintiff was the shooter. In binding Plaintiff

over, the Court ruled as follows:

> **THE COURT: Court reminds counsel, that at this stage of the proceeding, the showing of the People is the lessor threshold of probable cause and not the greater threshold of beyond a reasonable doubt, the way it will be at the next stage of the proceeding.**
>
> **What we have is a puzzle. What we have is a puzzle. And several pieces are being brought at preliminary exam stage of the proceeding. That's circumstantial evidence. But, at the preliminary exam stage of the proceeding the Court can use circumstantial evidence to establish whether the People have met their burden of proof.**
>
> **Ms. Jackson testified that a man who she identified as the defendant was laying on the ground during the shooting incident that occurred at Hart Plaza.**

She testified that she thought the man was laying on a gun because she did not see the gun until the man stood up.  She further testified that the man was shaken several times in an effort to see if he was injured.

The Court thinks that that is strong circumstantial evidence.  When the person laying on the ground did not respond one way or the other.

There is also testimony from another witness that the man got up and casually walked into the crowd.

The Court thinks that that is also strong circumstantial evidence with all the chaos going on, for a person to be laying on he groung and then to get up and casually walk away revealing a gun is circumstantial evidence.

The Court believes the People have established the burden of proof necessary for today's hearing.

The Court also find that Mr. Christopher Thackaberry, who was very credible as a witness tody, testified that Mr. Caldwell was the man he saw as the shooter.

The Court will acknowledge several witnesses were not clear about whom they saw or whether they saw anyone.  And, there was some inconsistent testimony regarding whether Mr. Caldwell was that person.  That is some of the witnesses acknowledge he was and some said that he was not.  Some indicated that there was a bald headed person lying on the ground, and some said they could not see his hair.

The Court is persuaded by the fact that at least two witnesses positively identified Mr. Caldwell as the shooter.  There were two witnesses who indicated he was not the shooter.

The Court is not persuaded by the fact that some of the witnesses identified the person as being light skinned.  Light skinned, dark skinned is relative.  It means different things to different people.  And without a color chart the Court cannot find that dark skin means the same thing to everyone, nor does light skin.  The Court is not persuaded by that.  Again, I say, it's a puzzle of circumstantial evidence, that the People have the burden of proving beyond a reasonable doubt at the next state of the proceeding.

But based upon the evidence presented today, the Court finds that the People have met their burden of proof with respect to Count 1, 3, 4, 5, 6, 9 and 10.

**There is probable cause to believe that the crimes charged in those counts were committed. Probable cause exist to believe they were committed in the City of Detroit. And probable cause exist to believe that the defendant committed each of the charges. And, so defendant will be bound over to the Criminal Division of the Circuit Court on the charges contained in the Complaint.** (Exh. F - pp. 196-199).

A review of the foregoing preliminary examination transcript makes It clear that Officer Jimenez was absolutely correct and truthful when he noted on the Investigator's Report/Warrant Request that Plaintiff Daron Caldwell had been identified as the Hart Plaza Fireworks shooter. It is equally clear that Plaintiff was bound over at the conclusion of the preliminary examination, not based on any statements or evidence that the police officers indicated *might* be given at the probable cause hearing; Mr. Caldwell was bound over based on testimony which was actually given. This testimony was absolutely consistent with the statements which had been included on the Investigator's Report/Warrant Request.

Plaintiff complains that statements from witnesses who would have exonerated Plaintiff were "ignored" by the police officer and APA. This contention is fallacious. Officer Jimenez included the identities of these witnesses on the Investigator's Report/Warrant Request and the police department made the Homicide file available to the Prosecuting Attorney's Office. It was then incumbent upon Plaintiff's then criminal defense attorney (who is Plaintiff's counsel in this civil action), to request the names of these witnesses from the Prosecutor's Office through the course of discovery. It appears from a review of the preliminary examination transcript that such a request was made; however, counsel complained that there was a delay by the Assistant Prosecutor in responding to his request. Whether this is, in fact, true is unknown; however, even if true, this complaint is directed against the Wayne County Prosecutor's Office and not the Detroit Police Department or its

14

employees.

Moreover, Plaintiff fails to specify the manner in which individuals, other than, ostensibly, the Officer In Charge of the murder investigation (Jimenez) "misrepresented" or "falsified" information. (Exh. A - para. 31). Plaintiff fails to state a claim, therefore, against the Chief of Police and other individually-named police officer defendants. After all of the testimony and evidence is deciphered in this matter, it is clear that there is absolutely no evidence that any Defendant, including Defendant Jimenez, violated any of Plaintiff's clearly established constitutional rights, nor has Plaintiff established how any such rights were violated. Consequently, each of these Defendants is immune to liability on Plaintiff's constitutional claim.

**B. Defendant City of Detroit**. Generally, a governmental agency such as the City of Detroit, may be held liable for the violation of an individual's constitutionally protected rights only when the agency, acting through the execution of its policies or practices directly inflicts the injury. Monell v Department of Social Services, 436 U.S. 685 (1978). See also, Oklahoma v Tuttle, 471 U.S. 808 (1985); Canton v Harris, 498 U.S. 378 (1989).

Asserting the mere existence of a policy alone, however, is insufficient to create liability. Such may be a formally adopted policy, or an informally developed custom, practice, or procedure. Monell v Department of Social Services, supra; see also, Collins v Harker Heights, 503 U.S. 115 (1992). An act performed pursuant to a "custom" that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. Webster v Houston, 735 F.2d 838 (5th Cir. 1984). See also, Bennett v City of Sildell, 735 F.2d 861 (5th Cir. 1984) and 472 U.S. 1016 (1985); Barneir v Szentmiklosi, 810 F.Supp 594 (E.D. Mich 1987). (Although 6th Circuit does not

15

require a heightened pleading standard, a complete failure to plead a policy or custom requires dismissal. Laise v City of Utica, No. 96-40232, 1997 US Dist Lexis 10267 (E.D. Mich, July 14, 1997, citing, Fluellen v US Department of Justice Drug Enforcement Administration, 816 F. Supp. 1206 (E.D. Mich 1993), citing Foster v Walsh, 864 F.2d 416 (6th Cir. 1988)); See also, Adickes v S.H. Kress & Co., 398 U.S. 144 (1970), cited by Monell at 690-691. A plaintiff must also demonstrate the policy or practice was, in fact, promulgated by policy making authority, it was unconstitutional on its face or in its application, and that it was the moving force behind Plaintiff's injuries. Monell v Department of Social Services, supra; Gonzales v Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993).

**1. Existence of an Unconstitutional Policy, Custom, or Practice.** Count X of Plaintiff's Complaint predicates liability upon Defendant City of Detroit pursuant to 42 USC §1983. This Count sets forth a number of alleged failures Plaintiff attributes to the City, including alleged a failure to maintain proper policy, a failure to properly train it police officers in the proper method of determining probable cause, a failure to enforce its Detroit Police Manual, etc. . . , (Exh. A - para. 109 (a)-(e)). Summary judgment is proper absent a specific claim or showing of a custom policy or practice which leads to deprivation of a constitutional protected that a Plaintiff alleges. City of Canton v Harris, 498 U.S. 376 (1989). In the instant matter, Plaintiff is without a source of factual support to establish: (1) that any constitutional violations occurred; or (2) even if a violation occurred, that it occurred from implementation of any unconstitutional customs, policies or practices that the City of Detroit has employed or adopted. In the absence of any evidence establishing the existence of a deliberately indifferent City policy, custom, or practice and since the defendant officers acted in good faith, Plaintiff fails to present a genuine issue of material fact for resolution

by the trier of fact. Consequently, summary judgment is appropriate. For this reason, Count X of Plaintiff's Complaint must fail against Defendant City of Detroit.

> ## II.    The Finding of Probable Cause at the Preliminary Hearing Precludes Relitigation of the Issue in a 42 U.S.C. § 1983 Cause

The United States Supreme Court has held that where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent 42 U.S.C. § 1983 action. Allen v McCurry, 449 U.S. 90 (1980); Hinchman v Moore, 312 F.3d 198 (6th Cir. 2002). The Sixth Circuit has held that a judicial determination of probable cause precludes relitigation in a § 1983 case unless an officer "knowingly makes false statements and omissions to the judge such that *but for* these falsities the judge would not have issued the warrant." (emphasis added) Vakilian v Shaw, 335 F.3d 509 (6th Cir. 2003). The Vakilian court held, however, that false statements or reckless omissions are made by a police officer to a court at a preliminary probable cause hearing, if probable cause would have existed in the absence of these false statement or reckless omissions, then the plaintiff's § 1983 cause cannot succeed. Id. at 517; Wilson v Russo, 212 F.3d 781 (3d Cir. 2000). The court should insert any fact recklessly omitted or delete any falsities, and if there would still be probable cause, then the misstatements are deemed immaterial. Wilson at 789.

Once evidence sufficient to produce probable cause exists, there is generally not a duty to make a further investigation. Coogan v Wixom, 820 F.2d 170 (1987); Ahlers v Schebil, 188 F.3d 365 (6th Cir. 1999). In Coogan, Plaintiff was arrested by defendant police officers and charged with burning a building he owned to collect insurance proceeds. Plaintiff sought damages on state tort

theories of malicious prosecution and intentional infliction of emotional distress against the defendant officers and damages pursuant to 42 U.S.C. § 1983 for alleged constitutional violations. After the arson investigation, the Officer in Charge submitted the filed to the county prosecutor's office, who authorized the warrant and took it to a district judge who issued the warrant. At a preliminary examination, Plaintiff was represented by counsel, who cross-examined all of the witnesses listed by the Prosecutor. The district judge found that probable cause existed that a felony had been committed and that Plaintiff had committed the felony. Plaintiff was bound over for trial, but the case was eventually dismissed because the prosecutor failed to meet speedy trial requirements. Plaintiff's civil cause was then commenced.

In <u>Coogan</u>, the Sixth Circuit, citing <u>Koski</u> v <u>Vohs</u>, 426, Mich. 424 (1986), quoting <u>Clanan</u> v <u>Nushzno</u>, 261 Mich. 423 (1933), held:

> A decision of probable cause is a determination that 'involves only the conduct of a reasonable man under the circumstance.' <u>Koski</u>, 426 Mich at 432, quoting Prosser & Keeton, *Torts*, (5th ed.), § 119. p. 882. The fact that Kirby may have been mistaken in concluding that plaintiff caused his building to burn is immaterial, since 'probable cause is a matter of the appearances presented to the defendant.' <u>Koski</u>, 426 Mich. at 434. Where there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person charged committed it, 'the failure to make a further investigation does not negate probable cause.' <u>Id.</u> at 436 (footnote omitted).

<u>Coogan</u> at 173.   The Court went on to state that "(T)he fact that plaintiff might have a defense to the charge that was unknown to Kirby *or* that he might ultimately win acquittal at a trial did not create an issue of material fact. The standard of proof of guilt beyond a reasonable doubt has no relevance to the issue of probable cause to institute a prosecution." <u>Id.</u> (emphasis added).  Probable cause to arrest and prosecute is based on the "facts and circumstance within the officer's knowledge at the time of the arrest." <u>Gardenhire</u> v <u>Schubert</u>, 20 F.3d 303 (6th Cir. 2000).

Generally, a positive identification by an eyewitness, standing alone, is sufficient to establish probable cause. Ahlers, supra; Wilson, supra. Most eyewitness statements are entitled to a presumption of reliability and veracity, but the identification must be a reliable identification. Ahlers, supra. The identification will be considered to be unreliable if at the time of arrest, there was an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he claims to have seen, or was mistaken. Id.

In the case at hand, Plaintiff was afforded a preliminary hearing, was represented by counsel and had a full and fair opportunity to cross-examine all witnesses. At the hearing, Plaintiff's attorney questioned the witnesses extensively. At the conclusion of the hearing, Judge Miriam B. Martin-Clark found that there was probable cause to proceed to trial. She was aware that there were also exculpatory witnesses and made note of their existence and testimony when issuing her probable cause determination. Analyzing this case under Coogan, supra, Plaintiff cannot relitigate the issue of probable cause in this 42 U.S.C. § 1983 action.

### III. Since Probable Cause Existed for Plaintiff's Arrest, then Plaintiff Cannot Maintain a Gross Negligence Cause

Counts I through IV of Plaintiff's Complaint allege that liability should be imposed upon the defendant police officers on state tort theories of liability. These claims, False Arrest, False Imprisonment, Gross Negligence and Defamation, rely heavily on the alleged lack of probable cause. Again, in moving to dismiss the charges, Wayne County Prosecutor Kym L. Worthy noted that the DNA evidence did "not eliminate Mr. Caldwell's participation in the shootings, or his known presence att he crime scene." Moreover, Plaintiff cannot prevail on any of his state tort theories against Detroit Police Chief Ella-Bully-Cummings. The Governmental Immunity Act, at MCL

691.1707(5) provides:

> Judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative, or executive authority.

As Chief of Police of the Detroit Police Department, Defendant Ella Bully-Cummings is the highest appointed executive of the Police Department and was acting as such at all relevant times. She is, therefore, entitled to summary judgment on Plaintiff's state tort claims pursuant to MCL 691.1407(5). Because there was probable cause to arrest Plaintiff and Plaintiff cannot relitigate this issue, then all Defendants are also entitled to summary judgment on Plaintiff's state tort claims.

### Conclusion

**WHEREFORE,** predicated upon the facts presented and the authorities cited above, Defendants respectfully request the court dismiss this action, with prejudice, for the reasons detailed above.

Respectfully submitted,

**KRYSTAL A. CRITTENDON (P49981)**
Assistant Corporation Counsel
CITY OF DETROIT LAW DEPARTMENT
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018

DATED:      June 30, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARON CALDWELL,

      Plaintiff,

-vs-

                                         Case No: 04 CV 74998
                                         Hon.  VICTORIA A. ROBERTS

CITY OF DETROIT, et al.,

      Defendants.

_____/

## AFFIDAVIT OF SERVICE

STATE OF MICHIGAN    )
                        )SS
COUNTY OF WAYNE     )

**FILED**

JUL - 8 2005

CLERK'S OFFICE, DETROIT-PSG
U.S. DISTRICT COURT

TO:  **Marlon Blake Evans P49541**
      **535 Griswold, #1630**
      **Detroit, MI  48226**

      KRYSTAL CRITTENDON, being first duly sworn, deposes and says that on July 7,  2005, she placed a copy of **Defendants' Motion for Summary Judgment,** with an exhibit, in the hands of Marlon Blake Evans.

                                  KRYSTAL CRITTENDON

Subscribed and sworn to before me
this 8TH day of July, 2005.

Notary Public, Wayne County, MI
My Commission Expires: _____