# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**DARON CALDWELL,**

       Plaintiff,       Case No: 04-CV-74998

-vs-                HON. VICTORIA A. ROBERTS

                   Magistrate Judge Virginia M. Morgan

**CITY OF DETROIT, a Municipal Corporation,**
**Detroit Police Officer MOISES JIMENEZ,**
**Detroit Police Officer ANTHONY JOHNSON,**
**Detroit Police Officer AUGUSTUS DAVIS,**
**Detroit Police Officer KENNETH JOHNSON,**
**Detroit Police Officer RUFUS STEWART,**

       Defendants.

_____/

**MARLON BLAKE EVANS (P49541)**
**Marlon Blake Evans & Associates**
Attorney for Plaintiff
3434 Russell Street, Suite 104
Detroit, MI   48207
(313) 962-2335
marlonbevans.asoc@sbcglobal.net


**KRYSTAL A. CRITTENDON (P49981)**
**CITY OF DETROIT LAW DEPARTMENT**
Attorney for Defendants
1650 First National Building
Detroit, MI   48226
(313) 237-3018
critk@law.ci.detroit.mi.us

_____/


### DEFENDANTS CITY OF DETROIT, MOISES JIMENEZ and ANTHONY JOHNSON'S MOTION FOR SUMMARY JUDGMENT

   **NOW COME** the defendants, **CITY OF DETROIT, MOISES JIMENEZ and ANTHONY JOHNSON**, by and through their attorney, KRYSTAL A. CRITTENDON, and hereby move this Honorable Court for summary judgment and/or to dismiss Plaintiff's cause pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 56 for the following reasons:

1.      This lawsuit is on record in the United States District Court for the Eastern District of Michigan;

2.      Plaintiff brought this lawsuit for damages arising out of the alleged constitutional deprivations suffered when he was arrested by City of Detroit Police Officers. Plaintiff sues the City of Detroit and the defendant police officers for tort damages and pursuant to 42 USC § 1983 for alleged violations of the United States Constitution. (See Exhibit A - Plaintiff's Amended Complaint and Jury Demand);

3.      The underlying facts surrounding the subject incident are as follows:

      a.      On **June 23, 2004**, the City of Detroit hosted the Freedom Festival Fireworks in downtown Detroit;

      b.      City of Detroit Police Officers were assigned to patrol downtown Detroit during the fireworks;

      c.      At approximately 10:15 p.m., a firearm was discharged several times near Hart Plaza;

      d.      When the shooting ceased, nine individuals had been shot;

      e.      Following the shooting, the City of Detroit Police Department (hereafter, "DPD") initiated a police investigation. Members of the Violent Crimes Task Force, (hereafter, "VCTF."), assisted in the investigation. The VCTF is an entity comprised of employees of several law enforcement agencies, including the DPD, Wayne County Sheriff's Department, Michigan State Police Department, the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Agency ("DEA");

      f.      Several witnesses to the shooting, including the victims, were identified and questioned by Detroit Police Officers;

      g.      In the hours following the incident, a number of tips were called into the Detroit Police Department by members of the public concerning possible suspects. One anonymous telephone tip was received, in which the tipster

stated that Plaintiff, Daron Caldwell, might be a person involved in the Hart Plaza shooting;

h.      On **June 24, 2004**, City of Detroit Police Officers Augustus Davis and Anthony Johnson were assigned to the VCTF. The officers received information as to Mr. Caldwell's address and established fixed surveillance. At approximately **5:15 p.m.**, Police Officer Anthony Johnson observed Plaintiff at his home and reported this observation via radio to other members of the DPD. Plaintiff was covertly followed from his home to a Barber Shop on Dexter Avenue in the City of Detroit. Once at this location, Plaintiff was approached by members of the VCTF and advised as to why he had been approached;

i.      Plaintiff was advised that he had been identified by an anonymous tipster as someone who may have been involved in the Hart Plaza shooting and asked whether he would consent to conveyance to the DPD's Homicide Section for an interview. (See Exhibit B - PCR of Augustus Davis);

j.      Plaintiff consented to the conveyance and was conveyed to DPD's Homicide Section by Police Officers Kenneth Johnson and Ruffus Stewart. (See Exhibit C - PCR's of Kenneth Johnson and Ruffus Stewart);

k.      En route to the DPD Homicide Section, Plaintiff asked if he could stop by his home to give his mother the keys to her vehicle, which Plaintiff had driven to the location from which he was being conveyed. The Officers acquiesced and drove Plaintiff to his home, where his mother was given the car keys.

l.      At no time during the transport was Plaintiff ever placed in handcuffs. (See Exhibit D - Affidavits of Kenneth Johnson and Ruffus Stewart);

m.     Officer Anthony Johnson did not convey Plaintiff to the DPD Homicide Section and never had any contact with Plaintiff. (See Exhibit D - Affidavit of Anthony Johnson);

n.      City of Detroit Police Officer Moises Jimenez was assigned to the DPD's Homicide Unit;

o.      On this same date, **June 24, 2004**, at approximately **5:45 p.m.**, a photograph show-up was conducted by Police Officer Moises Jimenez at Detroit Receiving Hospital. Two victims/witnesses from the previous night's shooting, Aaron Edmonson and Christopher, were shown an array of six photographs, which included Plaintiff Daron Caldwell's Michigan driver's license photograph, which was the second photograph in the array. (See

Exhibit E - Photograph Array).  These two witnesses selected Plaintiff when asked whether they could identify the shooter from Hart Plaza and indicated the following:

    i.       Aaron Edmondson: "That is the guy that was shooting."

    ii.      Christopher Thackaberry: "I would say it's #2, but it was dark, but that would be him, he was backing away."  (See Exhibit F - Show-up & Photo Identification Records of Aaron Edmondson and Christopher Thackaberry);

p.       Officer Jimenez returned to the DPD's Homicide Unit and advised members of the VCTF that Plaintiff had been identified by witnesses Edmondson and Thackaberry.  Officer Jimenez was advised that Plaintiff had been voluntarily conveyed to the Homicide Unit and had just arrived;

q.       On this same date, **June 24, 2004,** at **8:00 p.m.**, Officer Jimenez conducted a live show-up with witness Doria Jackson, who positively identified Plaintiff as being present at the fireworks shooting.  Ms. Jackson stated that she did not see Plaintiff discharge a firearm, but stated that he fell onto her blanket immediately after the shooting cased and that when she shw him get "up the ground, I saw a gun where he was laying and he ran."  (See Exhibit F - Show-up & Photo Identification Record of Doria Jackson);

r.       Other witnesses were also questioned during the investigation.  Some of the individuals states that they had not seen the shooter; some stated that they had not seen the shooter sufficiently to provide a description or pick him out in a line-up; others gave varying descriptions of the shooter related to his attire, height and skin complexion;

s.       On **June 24, 2004**, an Investigator's Report/Warrant Request was prepared by Officer Jimenez and presented to the Wayne County Prosecutor's Office. The Prosecutor's Office recommended that a Warrant be issued and presented the Warrant Request to the Thirty-Sixth District Court.  Plaintiff was charged with the following offenses: Assault with Intent to Commit Murder; Felon in Possession of a Firearm; and Felony Firearm.  The Warrant Request contained the names of *all* witnesses to the incident, both potential *inculpatory* and *exculpatory,* and the DPD Homicide File, which contained the witness statement of all witnesses, was made available to the Wayne County Prosecutor's Office.  (See Exhibit G - Investigator's Report/Warrant Request and Supplement);

t.       On July 7, 2004, a preliminary examination was held at Thirty-Sixth District

Court before Judge Miriam B. Martin-Clark. Nine civilian witnesses, including both *inculpatory* and *exculpatory* witnesses, testified at the preliminary examination. **No Police Officers testified at the hearing.** At its conclusion, Judge Martin-Clark determined that probable cause existed to believe that crimes had been committed and that Plaintiff, Daron Caldwell, had committed those crimes. In so doing, Judge Martin-Clark acknowledged the following: "several witnesses were not clear about whom they saw or whether they saw anyone. And, there was some inconsistent testimony regarding whether Mr. Caldwell was that person." She went on to conclude, however, that "(T)he Court is persuaded by the fact that at least two witnesses positively identified Mr. Caldwell as the shooter. There were two witnesses who indicated he was not the shooter." (See Exhibit H - Preliminary Examination Transcript, pp. 197, 198);

u. On October 4, 2002, Wayne County Prosecutor Kym L. Worthy moved to dismiss all charges against Plaintiff, *without prejudice*. Forensic evidence had been received back from the forensic laboratory relating to DNA evidence found at the scene of the shooting which suggested that two weapons had been used during the fireworks shooting. In moving to dismiss the charges, Prosecutor Worthy noted that the DNA evidence "did not eliminate Mr. Caldwell's participation in the shootings, or his known presence at the crime scene." (See Exhibit I - Prosecutor Kym L. Worthy's "Fireworks Shooter" Press Conference Statement);

4. On December 23, 2004, Plaintiff filed a ten-count Complaint against the City of Detroit, Detroit Police Chief Ella-Bully Cummings, Defendant Moises Jimenez (the Officer-in-Charge of the investigation), and thirteen other police department employees, including "John Doe" Police Officers;

5. Plaintiff's ten-count Complaint alleged the following theories of liability: **Count I** - False Arrest; **Count II** - False Imprisonment; **Count III** - Gross Negligence; **Count IV** - Defamation; **Count V** - Conspiracy to Violate State and Federal Law in Violation of 42 USC § 1983; **Count VI** - Malicious Prosecution; **Count VII** - Constitutional Violations for Illegal Search Under 42 USC § 1983 and State Law as to Defendant Police Officers; **Count VIII** - Constitutional Violations for the Illegal Act of Fabricating Evidence Under 42 USC § 1983 and State Law as to Defendant Police

Officer; **Count IX** - Constitutional Violation for the Illegal Act of Defamation of Character Under 42 USC § 1983 and State Law as to Defendant Police Officer; and **Count X** - Constitutional Violations Under 42 USC § 1983 as to Defendant City of Detroit;

6.       On July 28, 2005, Defendants moved for *Summary Judgment*.  The City of Detroit argued that it could not be held liable for any constitutional violations because pursuant to case law, a governmental agency can only be held liable for violation of an individual's constitutionally protected right when the agency, acting through the execution of its own policies or practices directly inflict the injury, no merely because it employs a tortfeasor.  Monell v Dept. of Social Services 436 U.S. 658 (1978).  The individually-named Defendants argues that they were qualifiedly immune from the imposition of liability, as they did not violate any of Plaintiff's constitutionally-protected rights. Davis v Sherer, 468 U.S. 183, reh den 468 U.S. 1226 (1984.;

7.       On March 29, 2006, this Honorable Court entered an Order granting *Defendants' Motion for Summary Judgment* in its entirety, with the exception of Defendants Anthony Johnson, Moises Jimenez and the City of Detroit. The balance of the Motion was granted, in part and denied, in part as to Defendants Johnson, Jimenez and the City of Detroit;

8.       In the Order, Plaintiff was directed to amend his Complaint to properly allege a Fourth Amendment unlawful arrest claim in violation of § 1983;

9.       On April 12, 2006, Plaintiff filed an Amended Complaint against Defendants Anthony Johnson, Moises Jimenez and the City of Detroit.  He further named City of Detroit Police Officers Augustus Davis, Kenneth Johnson and Ruffus Stewart as party-defendants, but has never served them with copies of the Summons and Complaint;

10.      Plaintiff's seven-count Amended Complaint asserts the following theories of

liability: **Count I** - False Arrest and Imprisonment (Officers Anthony Johnson, Augustus Davis, Kenneth Johnson and Rufus Stewart); **Count II** - False Arrest and Imprisonment (Officer Moises Jimenez); **Count III** - Malicious Prosecution (Officers Anthony Johnson, Augustus Davis, Kenneth Johnson and Rufus Stewart); **Count IV** - Malicious Prosecution (Moises Jimenez); **Count V** - Constitutional Violations for Illegal Seizure under 42 U.S.C. § 1983 and State Law (Officers Anthony Johnson, Augustus Davis, Kenneth Johnson and Rufus Stewart); **Count VI** - Constitutional Violations for Illegal Seizure under 42 U.S.C. § 1983 and State Law (Moises Jimenez); and, **Count VII** - Constitutional Violations for Illegal Seizure under 42 U.S.C. § 1983 and State Law (City of Detroit);

11. Per this Court's Scheduling Order, dispositive motions must be filed by July 10, 2007;

12. Pursuant to 42 U.S.C. § 1983, a police officer who acts in good faith in performing his job duties is entitled to qualified immunity from the imposition of liability;

12. A governmental officer must violate an individual's clearly established constitutional rights before the defense of qualified immunity is unavailable to the official, so long as the officer believed his or her conduct did not violate those rights and the officer's belief was objectively reasonable. Davis v Sherer, 468 U.S. 183, reh den 468 U.S. 1226 (1984);

13. Additionally, where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent 42 U.S.C. § 1983 action. Allen v McCurry, 449 U.S. 90 (1980); Hinchman v Moore, 312 F.3d 198, 202 (6th Cir. 2002);

14.     Also, where there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person committed it, the failure to make a further investigation does not negate probable cause. Koski v Vohs, 426 Mich. 424 (1986); Clanan v Nushzno, 261 Mich. 423 (1933);

15.     In the case at hand, Plaintiff has not established that the individually-named defendants violated any of his constitutionally protected rights; Police Officer Moises Jimenez turned over all witness statements, both inculpatory and exculpatory, to the Wayne County Prosecutor's Office. The Assistant Prosecuting Attorney presented the request for a Warrant to a District Court Judge, who signed it. Plaintiff was afforded a preliminary examination, at which he was represented by counsel and had a full and fair opportunity to examine and cross-examine all witnesses. At the conclusion of the preliminary examination, the Court concluded that probable cause existed and Plaintiff was bound over trial;

16.     Moreover, as the individually-named Defendants did not violate any of Plaintiff's constitutionally protected rights, then the officers are qualifiedly immune from the imposition of liability on Counts V and VI of Plaintiff's Amended Complaint;

17.     With respect to Count VII, which seeks to impose liability against the City of Detroit for alleged constitutional violations pursuant to 42 U.S.C. § 1983, a governmental body cannot be held liable merely because it employs a tortfeasor. Monell v Dept. of Social Services, 436 U.S. 658 (1978);

18.     A governmental agency, such as the City of Detroit, may be held liable for the violation of an individual's constitutionally protected rights only when the agency, acting through the execution of its policies or practices directly inflicts the injury. Monell v Dept. of Social Services,

436 U.S. 658 (1978);

19.     In the instant case, since Plaintiff has failed to identify any unconstitutional customs, policies or practices which caused any injury, then Defendant City of Detroit is not liable to Plaintiff for any constitutional deprivations pursuant to 42 U.S.C. § 1983;

21.     Finally, Counts I through IV of Plaintiff's Amended Complaint allege that liability should be imposed upon the defendant police officers on state tort theories of liability. Plaintiff cannot prevail on any of these claims because, as discussed above, probable cause existed for Plaintiff's arrest;

22.     As neither Defendants Anthony Johnson or Augustus Davis arrested Plaintiff or caused him to be arrested, Plaintiff has failed to state a claim against them;

23.     Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for summary judgment if an opposing party has failed to state a claim upon which relief can be granted;

24.     Federal Rule of Civil Procedure 56(b) provides that a "party whom a claim, counterclaim, or cross-claim is asserted...... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.";

29.     Federal Rule of Civil Procedure 56(c) provides that the judgment sought shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law;

30.     For the foregoing reasons, all Defendants move for summary judgment.

**WHEREFORE,** predicated upon the facts presented and the authorities cited above, Defendants respectfully request the court dismiss this action, with prejudice, for the reasons detailed above and in the attached Brief in Support.

Respectfully submitted,

 s/ Krystal A. Crittendon
Assistant Corporation Counsel
CITY   OF   DETROIT   LAW   DEPARTMENT
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018
critk@law.ci.detroit.mi.us.
(P49981)

DATED:        July 2, 2007

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DARON CALDWELL,**

                       Plaintiff,                Case No: 04-CV-74998

-vs-                                         HON. VICTORIA A. ROBERTS
                                               Magistrate Judge Virginia M. Morgan

**CITY OF DETROIT, a Municipal Corporation,**
**Detroit Police Officer MOISES JIMENEZ,**
**Detroit Police Officer ANTHONY JOHNSON,**
**Detroit Police Officer AUGUSTUS DAVIS,**
**Detroit Police Officer KENNETH JOHNSON,**
**Detroit Police Officer RUFUS STEWART,**

                      Defendants.
_____/

**MARLON BLAKE EVANS (P49541)**
**Marlon Blake Evans & Associates**
Attorney for Plaintiff
3434 Russell Street, Suite 104
Detroit, MI   48207
(313) 962-2335
marlonbevans.asoc@sbcglobal.net


**KRYSTAL A. CRITTENDON (P49981)**
**CITY OF DETROIT LAW DEPARTMENT**
Attorney for Defendants
1650 First National Building
Detroit, MI   48226
(313) 237-3018
critk@law.ci.detroit.mi.us
_____/


## DEFENDANTS CITY OF DETROIT, MOISES JIMENEZ and ANTHONY JOHNSON'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

        **NOW COME** the defendants, **CITY OF DETROIT, MOISES JIMENEZ and**

**ANTHONY JOHNSON**, by and through their attorney, **KRYSTAL A. CRITTENDON**, and for

their Brief in Support of their Motion to Dismiss and/or for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, submit the following:

## Statement of Issues

Pursuant to 42 U.S.C. § 1983, a police officer who acts in good faith in performing his job duties is entitled to qualified immunity from the imposition of liability. A governmental officer must violate an individual's clearly established constitutional rights before the defense of qualified immunity is unavailable to the official, so long as the officer believed his or her conduct did not violate those rights and the officer's belief was objectively reasonable. Plaintiffs have not established that the individually-named defendant Police Officers violated any clearly established constitutional rights. In the absence of such a showing, can the defendant Police officers be held liable for alleged constitutional deprivations or are they qualifiedly immune from the imposition of liability pursuant to 42 U.S.C. § 1983?

A governmental agency, such as the City of Detroit, may be held liable for the deprivation of an individual's federal constitutional rights only where, through the implementation of the agency's policies, customs, or practices, the agency directly causes such deprivation. In the absence of any evidence establishing the existence of a City policy, custom, or practice causally related to an alleged deprivation, do Plaintiffs' federal constitutional claims fail?

Federal precedents hold that where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent 42 U.S.C. § 1983 action. If a defendant is afforded a full and fair opportunity to challenge the existence of probable cause at a preliminary hearing and do so, may she later initiate a § 1983 civil action and relitigate the issue of the existence of probable cause for her arrest?

State law mandates that a plaintiff establish that probable cause did not exist for his arrest and/or detention before he can prevail in a civil action on the state tort theories of False Arrest, False Imprisonment and Malicious Prosecution. If probable cause existed for the arrest and/or detention of a plaintiff, can he still maintain a civil cause of action against a police officer defendant for False Arrest, False

Imprisonment or Malicious Prosecution?

**Authority**
**The FRCP 12(b)(6) and 56 Predicates**

Any pleading which sets forth a claim for relief may be challenged by a Rule 12(b)(6) motion. Walker Distributing Co. v Lucky Lager Brewing, 323 F.2d (9th Cir. 1963).   Such a motion tests the legal sufficiency of the pleading. German v Killeen, 495 F.Supp. 822 (D.Mich 1980).  Consequently, the court must limit its inquiry to the pleading alone.  Michigan Hospital Association v Department of Social Services, 738 F.Supp. 1080 (D.Mich. 1990).  Rule 12(b)(6) motions serve a useful purpose in disposing of legal issues with a minimum of time and expense to the parties.  Hiland Dairy Co. v Kroger Co., 402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961.

In accordance with FRCP 56, any party may move for summary judgement on the ground there is no genuine issue of fact, and when as a consequence, judgment is proper as a matter of law. Various matters in addition to the pleadings may be considered in connection with an FRCP 56 summary judgment motion.   Such matters may include affidavits, depositions, answers to interrogatories, and admissions, and oral testimony.  Federal Rule of Civil Procedure 56(e), 56(c) and 43(e).  A district court may not delay in deciding whether officers are entitled to qualified immunity if the defense is properly raised prior to discovery.  Summers v Leis, 368 F.3d 881, 886 (6th Cir. 2004).

In deciding an FRCP 56 motion, the court must concern itself solely with the existence of any genuine issue of material fact, and must view the pleadings, the supporting matters, and all reasonable inference drawn therefrom in the light most favorable to the non-moving party.  Jaroslawicz v Seedman, 528 F.2d 727 (2d Cir. 1975).  Consequently, when the pleadings, the supporting matters,

and reasonable inferences demonstrate a material factual dispute, summary judgment is inappropriate. Meredith v Hardy, 554 F.2d 764 (5th Cir. 1977). Not every issue of fact or conflicting inference, however, presents a genuine issue of material fact requiring denial of an FRCP 56 summary judgment motion. Anderson v Liberty Lobby, 477 U.S. 242 (1986). Instead, the substantive law governing the case will determine what issues are material. Street v J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989). The party opposing an FRCP 56 motion must also present more than a mere scintilla of affirmative evidence to establish a material factual dispute. Street v J.C. Bradford & Co., Id. A simple showing of some degree of metaphysical doubt regarding the material facts is insufficient. Street v J.C. Bradford & Co., Id.

## Procedural History

On July 8, 2005, Defendants City of Detroit, Police Chief Ella Bully-Cummings and thirteen City of Detroit Police Officers, who were then named Defendants in this matter, filed a *Motion for Summary Judgment*. Oral argument occurred on October 12, 2005. Plaintiff argued in opposition to Defendants' Motion, *inter alia*, that Plaintiff had been unlawfully arrested, without a warrant or probable cause, by City of Detroit Police Officers Kenneth Johnson and Ruffus Stewart. Defendants responded that these individuals were not parties to the lawsuit and that Plaintiff was raising this claim for the first time in his response to *Defendant's Motion for Summary Judgment*.

On March 29, 2006, this Honorable Court entered an Order, granting, in part, and denying, in part, Defendants' *Motion for Summary Judgment*. The Chief of Police and eleven (11) of the named Defendants were dismissed from the matter; summary judgment was denied as to Defendants Moises Jimenez and Anthony Johnson. This Court held that questions of fact existed with respect to whether: (1) Plaintiff was arrested without probable cause by Police Officers Kenneth Johnson and

4

Ruffus Stewart; (2) Defendant Moises Jimenez caused Plaintiff to be detained and prosecuted without probable cause, and (3) whether the City of Detroit was deliberately indifferent to whether its customs, policies or practices caused Plaintiff to suffer constitutional violations by failing to make policy revisions required by two Consent Judgments entered into between the City of Detroit and the Department of Justice in United States District Court Case Number 03-72258. In the Order, this Court ordered that Plaintiff must amend his pleadings to properly assert a cause of action pursuant to 42 U.S.C. § 1983. This Court further granted leave for Plaintiff to amend his pleadings to add Augustus Davis, Kenneth Johnson and Ruffus Stewart as party-defendants. (See Exhibit A - Plaintiff's Amended Complaint and Jury Demand).

On April 12, 2006, Plaintiff amended his pleadings and added Defendants Davis, Johnson and Stewart as named Defendants. A copy of the amended pleadings were served upon counsel for Defendants City of Detroit, Moises Jimenez and Anthony Johnson, who were Defendants in the original litigation. Defense counsel filed an Answer to Complaint on behalf of Defendants City of Detroit, Jimenez and A. Johnson. Plaintiff has never served the newly-named Defendants, Augustus Davis, Kenneth Johnson and Ruffus Stewart with a copy of the *Summons* and *Amended Complaint*. The Summons, if ever issued, has now expired. Per this Court's Scheduling Order, dispositive motions must be filed by July 10, 2007.

### Statement of Material Facts

On **June 23, 2004**, the City of Detroit hosted a fireworks celebration in downtown Detroit. At approximately 10:15 p.m., someone began discharging a firearm near Hart Plaza. When the shooting ceased, it was determined that nine individuals had been shot. Following the shooting, the City of Detroit Police Department (hereafter, "DPD") initiated a police investigation. Members of

the Violent Crimes Task Force, (hereafter, "VCTF."), assisted in the investigation. The VCTF is an entity comprised of employees of several law enforcement agencies, including the DPD, Wayne County Sheriff's Department, Michigan State Police Department, the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Agency ("DEA"). Several witnesses to the shooting, including the victims, were identified and questioned by Detroit Police Officers. In the hours following the incident, a number of tips were called into the Detroit Police Department by members of the public concerning possible suspects. One anonymous telephone tip was received, in which the tipster stated that Plaintiff, Daron Caldwell, might be a person involved in the Hart Plaza shooting.

On **June 24, 2004**, City of Detroit Police Officers Augustus Davis and Anthony Johnson were assigned to the VCTF. The officers received information as to Mr. Caldwell's address and established fixed surveillance. At approximately **5:15 p.m.**, Police Officer Anthony Johnson observed Plaintiff at his home and reported this observation via radio to other members of the DPD. Plaintiff was covertly followed from his home to a Barber Shop on Dexter Avenue in the City of Detroit. Once at this location, Plaintiff was approached by members of the VCTF and advised as to why he had been approached. Plaintiff was advised that he had been identified by an anonymous tipster as someone who may have been involved in the Hart Plaza shooting and asked whether he would consent to conveyance to the DPD's Homicide Section for an interview. (See Exhibit B - Preliminary Complaint Report of Augustus Davis).

Plaintiff consented to the conveyance and was conveyed to DPD's Homicide Section by Police Officers Kenneth Johnson and Ruffus Stewart. (See Exhibit C - Preliminary Complaint Record of Kenneth Johnson and Ruffus Stewart). City of Detroit Police Officer Moises Jimenez was assigned to the DPD's Homicide Unit. En route to the DPD Homicide Section, Plaintiff asked if he could stop

by his home to give his mother the keys to her vehicle, which Plaintiff had driven to the location from which he was being conveyed. The Officers acquiesced and drove Plaintiff to his home, where his mother was given the car keys. At no time during the transport was Plaintiff ever placed in handcuffs. (See Exhibit D - Affidavits of Kenneth Johnson and Ruffus Stewart).

On this same date, **June 24, 2004**, at approximately **5:45 p.m.**, a photograph show-up was conducted by Police Officer Moises Jimenez at Detroit Receiving Hospital. Two victims/witnesses from the previous night's shooting, Aaron Edmonson and Christopher, were shown an array of six photographs, which included Plaintiff Daron Caldwell's Michigan driver's license photograph, which was the second photograph in the array. (See Exhibit E - photograph array). These two witnesses selected Plaintiff when asked whether they could identify the shooter from Hart Plaza and indicated the following. When shown the photograph array, witness Aaron Edmondson pointed to Plaintiff's photograph and stated, "That is the guy that was shooting." When witness Christopher Thackaberry was shown the same photograph array, he also pointed out Plaintiff and stated, "I would say it's #2 (Plaintiff), but it was dark, but that would be him, he was backing away." (See Exhibit F - Show-up & Photo Identification Records of Aaron Edmondson and Christopher Thackaberry).

Officer Jimenez returned to the DPD's Homicide Unit and advised members of the VCTF that Plaintiff had been identified by witnesses Edmondson and Thackaberry. Officer Jimenez was advised that Plaintiff had been voluntarily conveyed to the Homicide Unit and had just arrived. On this same date, **June 24, 2004**, at **8:00 p.m.**, Officer Jimenez conducted a live show-up with witness Doria Jackson, who positively identified Plaintiff as being present at the fireworks shooting. Ms. Jackson stated that she did not see Plaintiff discharge a firearm, but stated that he fell onto her blanket immediately after the shooting cased and that when she shw him get "up the ground, I saw a gun

where he was laying and he ran." (See Exhibit F - Show-up & Photo Identification Record of Doria Jackson). Other witnesses were also questioned during the investigation. Some of the individuals states that they had not seen the shooter; some stated that they had not seen the shooter sufficiently to provide a description or pick him out in a line-up; others gave varying descriptions of the shooter related to his attire, height and skin complexion.

On **June 24, 2004**, an Investigator's Report/Warrant Request was prepared by Officer Jimenez and presented to the Wayne County Prosecutor's Office. The Prosecutor's Office recommended that a Warrant be issued and presented the Warrant Request to the Thirty-Sixth District Court. Plaintiff was charged with the following offenses: Assault with Intent to Commit Murder; Felon in Possession of a Firearm; and Felony Firearm. The Warrant Request contained the names of *all* witnesses to the incident, both potential *inculpatory* and *exculpatory,* and the DPD Homicide File, which contained the witness statement of all witnesses, was made available to the Wayne County Prosecutor's Office. (See Exhibit G - Investigator's Report/Warrant Request and Supplement).

On July 7, 2004, a preliminary examination was held at Thirty-Sixth District Court before Judge Miriam B. Martin-Clark. **No Police Officers testified at the hearing**. Nine civilian witnesses, including both *inculpatory* and *exculpatory* witnesses, testified at the preliminary examination. At its conclusion, Judge Martin-Clark determined that probable cause existed to believe that crimes had been committed and that Plaintiff, Daron Caldwell, had committed those crimes. In so doing, Judge Martin-Clark acknowledged the following: "several witnesses were not clear about whom they saw or whether they saw anyone. And, there was some inconsistent testimony regarding whether Mr. Caldwell was that person." She went on to conclude, however, that "(T)he Court is persuaded by the

fact that at least two witnesses positively identified Mr. Caldwell as the shooter. There were two witnesses who indicated he was not the shooter." (See Exhibit H - Preliminary Examination Transcript, pp. 197, 198).

On October 4, 2002, Wayne County Prosecutor Kym L. Worthy moved to dismiss all charges against Plaintiff, *without prejudice*. Forensic evidence had been received back from the forensic laboratory relating to DNA evidence found at the scene of the shooting which suggested that two weapons had been used during the fireworks shooting. In moving to dismiss the charges, Prosecutor Worthy noted that the DNA evidence "did not eliminate Mr. Caldwell's participation in the shootings, or his known presence at the crime scene." (See Exhibit I - Prosecutor Kym L. Worthy's "Fireworks Shooter" Press Conference Statement).

Plaintiff has now filed a seven-count Amended Complaint against the City of Detroit, Moises Jimenez (the Officer-in-Charge of the Investigation), and Police Officers Anthony Johnson, Augustus Davis, Kenneth Johnson and Ruffus Stewart. Police Officers Augustus Davis, Kenneth Johnson and Ruffus Stewart are named in the caption as party-defendants, but have never served been served with copies of the Summons and Complaint. Plaintiff's Amended Complaint asserts the following theories of liability: **Count I** - False Arrest and Imprisonment (Officers Anthony Johnson, Augustus Davis, Kenneth Johnson and Rufus Stewart); **Count II** - False Arrest and Imprisonment (Officer Moises Jimenez); **Count III** - Malicious Prosecution (Officers Anthony Johnson, Augustus Davis, Kenneth Johnson and Rufus Stewart); **Count IV** - Malicious Prosecution (Moises Jimenez); **Count V** - Constitutional Violations for Illegal Seizure under 42 U.S.C. § 1983 and State Law (Officers Anthony Johnson, Augustus Davis, Kenneth Johnson and Rufus Stewart); **Count VI** - Constitutional Violations for Illegal Seizure under 42 U.S.C. § 1983 and State Law (Moises Jimenez); and, **Count**

**VII** - Constitutional Violations for Illegal Seizure under 42 U.S.C. § 1983 and State Law (City of Detroit). For the following reasons, Defendants City of Detroit, Moises Jimenez and Anthony Johnson are entitled to summary judgment on all claims.

<u>**Argument**</u>

**IV.    No Constitutional Violations Occurred for Which Defendants are Liable Pursuant to 42 USC § 1983 Relative to Plaintiff's Initial Detention**

**A.    Defendant Police Officers.** When a governmental officer violates an individual's *clearly established* constitutional rights, the defense of qualified immunity is available if (1) the officer believed his or her conduct did not violate those rights and (2) the officer's belief was objectively reasonable. <u>Davis</u> v <u>Sherer</u>, 468 U.S. 183 (1984), <u>reh</u> <u>den</u> 468 U.S. 1226(1984); <u>Hope</u> v <u>Pelzer</u>, 536 U.S. 730 (2002). The objective reasonableness of an official's action is determined by the law existing at the time of the conduct in question. <u>Anderson</u> v <u>Creighton</u>, 483 U.S. 635 (1987), <u>on</u> <u>remd</u> 724 F.Supp 654 (D.Minn 1989). Whether an official's belief is objectively reasonable depends on the facts of the particular case. <u>Hurlman</u> v <u>Rice</u>, 927 F.2d 75 (2nd Cir. 1991). Specifically, the officer's conduct under the existing circumstances is measured against the knowledge of a reasonable officer acting in similar circumstances. <u>Boyle</u> v <u>Burke</u>, 925 F.2d 497 (1st Cir. 1991). Qualified immunity is available if a reasonable officer would be uncertain regarding the manner in which the law applies to the particular facts with which he or she is confronted. <u>Hopkins</u> v <u>Stice</u>, 916 F.2d 1029 (5th Cir. 1990). Similarly, if reasonable officers could disagree regarding the lawfulness of a particular act, the defense of qualified immunity is appropriate. <u>Pfannstiel</u> v <u>Marion</u>, 918 F.2d 1178 (5th Cir. 1990). Since the objective reasonableness of an official's conduct determines his or her entitlement to qualified immunity, subjective factors and surrounding circumstances generally are not relevant to the

determination.  <u>Davis</u> v <u>Sherer</u>, <u>supra</u>.  Whether the official's conduct conforms to the objective reasonableness standard may be established as a matter of law when there is no genuine issue of fact regarding the official's conduct.  <u>Thorsted</u> v <u>Kelly</u>, 858 F.2d 571 (9th Cir. 1988).

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known.  The procedure for evaluating claims of qualified immunity is tripartite: (1) "First, we determine whether a constitutional violation has occurred; (2) second, we determine whether the right violated was a clearly established right of which a reasonable person would have known; and (3) we determine whether the plaintiff has alleged sufficient facts and supported the allegations by sufficient evidence, to indicate what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." <u>Williams</u> v <u>Mehra</u> 186 F.3d 685 (6th Cir. 1999)(en banc), citing <u>Harlow</u> v <u>Fitzgerald</u>,  457 U.S. 800 (1982).

Police officers are entitled to qualified immunity for their discretionary functions, provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Pierson</u> v <u>Ray</u>, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); <u>Rich</u> v <u>City of Mayfield Heights</u>, 955 F.2d 1092 (6th Cir. 1992); <u>Harlow</u> v <u>Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).   The defense of qualified immunity is available if the officer believed his or her conduct did not violate the subject individual's rights, and the official's belief was objectively reasonable.  <u>Davis</u> v <u>Sherer</u>, <u>supra</u>.

The insulation from federal civil rights litigation bestowed upon state governmental personnel by qualified immunity sweeps broadly, affording them ample room for mistaken judgments by

protecting "all but the plainly incompetent or those who knowingly violate the law."  Hunter v

Bryant, 502 U.S. 224 (1991); Sova v City of Mount Pleasant, 1998 WL 193183 (6th Cir. (Mich) 24

April 1998); See also, Megenity v Stenger, 27 F.3d 1120 (6th Cir 1994).  The courts must avoid

substituting personal notions of proper police procedure for the instantaneous decision of the officers

at the scene; they must never allow the theoretical, sanitized world of our imagination to replace the

dangerous and complex world that policemen face every day.  Smith v Freland, 954 F.2d 343 (6th

Cir. 1992); Graham v O'Connor, 490 U.S. 386 (1989). What constitutes "reasonable " action may

seem quite different to someone facing a possible assailant than to someone analyzing the question

at leisure."  Smith v Freland, supra.

    The officer's conduct under the existing circumstances is measured against the knowledge of

a reasonable official acting in similar circumstances.  Boyle v Burke, 925 F.2d 497 (1st Cir. 1991);

Lopez v Robinson, 914 F.2d 497 (4th Cir 1990); Auriemma v Rice, 910 F.2d 1449 (7th Cir 1990),

cert den 111 S.Ct. 2796 (1991).

    Qualified immunity is solely an issue of law to be determined by the trial judge prior to the

trial; such issue presents a threshold question which is to be resolved as early as possible.  Donta v

Hooper, 774 F.2d 716 (6th Cir. 1985) (citing Harlow v Fitzgerald), supra.; Harlow v Fitzgerald, supra.

    A defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient

to create a genuine issue as to the truth of the allegations reflecting the defendant, in fact, committed

acts that violated clearly established law.  Poe v Haydon, 853 F.2d 418 (6th Cir. 1988). The burden

of proof is ultimately upon plaintiff to show that defendant is not entitled to qualified immunity.  Rich

v City of Mayfield Heights, 955 F.2d 1092 (6th Cir. 1992).   Summary judgment is proper absent a

specific claim or showing of a custom policy or  practice which leads to deprivation of a constitutional

protected that a Plaintiff alleges.  <u>City of Canton</u> v <u>Harris</u>, 498 U.S. 376 (1989).

In the case at bar, in the Court's Order granting, in part, and denying, in part (without prejudice), Defendants previously-filed Motion for Summary Judgment, this Honorable Court held that "(t)here is a question of fact regarding whether Plaintiff's initial detention violated the Fourth Amendment."  (See Opinion and Order on Defendants' Motion for Summary Judgment, Docket Number 28, page 21).  This claim is asserted against Police Officers Anthony Johnson, Augustus Davis,  Kenneth Johnson and Ruffus Stewart, who Plaintiff claims arrested him without probable cause and without a Warrant.  As previously stated, Officers Kenneth Johnson and Stewart are the only police officers who conveyed Plaintiff to the DPD Homicide Section for questioning.  The Officers aver that Plaintiff consented to the transport.  (Exh. D).  Whether Plaintiff agreed to the conveyance need not be resolved because Officers Augustus Davis, Anthony Johnson and Ruffus Stewart are not parties to this action.  Counts I, III and V of Plaintiff's Amended Complaint, therefore, as they relate to Defendants Augustus Davis, Kenneth Johnson and Ruffus Stewart, must be dismissed.  As these Counts relate to Defendant Anthony Johnson, it is undisputed that Officer Johnson did not convey Plaintiff to the DPD Homicide Section and never had any contact with Plaintiff.  (See Exhibit D - Affidavit of Anthony Johnson).  Officer Anthony Johnson cannot, therefore, be held liable for Plaintiff's initial detention.

**II.**    **No Constitutional Violations Occurred for Which
Defendant Moises Jimenez is Liable Pursuant to 42 USC
§ 1983 Relative to Plaintiff's Formal Arrest**

The United States Supreme Court and the Sixth Circuit have held that where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation

of that finding in a subsequent 42 U.S.C. § 1983 action. <u>Allen</u> v <u>McCurry</u>, 449 U.S. 90 (1980); <u>Hinchman</u> v <u>Moore</u>, 312 F.3d 198, 202 (6th Cir. 2002). The Sixth Circuit has held that a judicial determination of probable cause precludes relitigation in a § 1983 case unless an officer "knowingly makes false statement and omissions to the judge such that *but for* these falsities the judge would not have issued the warrant." (emphasis added). <u>Vakilian</u> v <u>Shaw</u>, 335 F.3d 509 (6th Cir. 2003). The <u>Vakilian</u> court further held that if false statements or reckless omissions are made by a police officer to a court at a probable cause hearing, if probable cause would have existed in the absence of these false statements or reckless omissions, then the plaintiff's § 1983 cause cannot succeed. <u>Id.</u> at 517; <u>Wilson</u> v <u>Russo</u>, 212 F.3d 781 (3rd Cir. 2000). The court should ignore any fact recklessly omitted or delete any falsities, and if there would still be probable cause, then the misstatements are deemed immaterial. <u>Wilson</u> at 789.

Once evidence sufficient to produce probable cause exists, there is generally no duty to make a further investigation. <u>Coogan</u> v <u>Wixom</u>, 820 F.2d 170 (1987); <u>Ahlers</u> v <u>Schebil</u>, 188 F.3d 365 (6th Cir. 1999). In <u>Coogan</u>, Plaintiff was arrested by defendant police officers and charged with burning a building he owned to collect insurance proceeds. Plaintiff sought damages on state tort theories of malicious prosecution and intentional infliction of emotional distress against the defendant officers and damages pursuant to 42 U.S.C. § 1983 for alleged constitutional violations. After the arson investigation, the Officer in Charge submitted the filed to the county prosecutor's office, who authorized the warrant and took it to a district judge who issued the warrant. At a preliminary examination, Plaintiff was represented by counsel, who cross-examined all of the witnesses listed by the Prosecutor. The district judge found that probable cause existed that a felony had been committed and that Plaintiff had committed the felony. Plaintiff was bound over for trial, but the case

was eventually dismissed because the prosecutor failed to meet speedy trial requirements. Plaintiff's civil cause was then commenced.

In <u>Coogan</u>, the Sixth Circuit, citing <u>Koski</u> v <u>Vohs</u>, 426, Mich 424 (1986), quoting <u>Clanan</u> v <u>Nushzno</u>, 261 Mich 423 (1933), held:

> A decision of probable cause is a determination that 'involves only the conduct of a reasonable man under the circumstance.' <u>Koski</u>, 426 Mich at 432, quoting Prosser & Keeton, *Torts*, (5th ed.), § 119. p. 882. The fact that Kirby may have been mistaken in concluding that plaintiff caused his building to burn is immaterial, since 'probable cause is a matter of the appearances presented to the defendant.' <u>Koski</u>, 426 Mich at 434. Where there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person charged committed it, 'the failure to make a further investigation does not negate probable cause.' <u>Id.</u> at 436 (footnote omitted).

<u>Coogan</u> at 173. The Court went on to state that "(T)he fact that plaintiff might have a defense to the charge that was unknown to Kirby *or* that he might ultimately win acquittal at a trial did not create an issue of material fact. The standard of proof of guilt beyond a reasonable doubt has no relevance to the issue of probable cause to institute a prosecution." <u>Id.</u> (emphasis added). Probable cause to arrest and prosecute is based on the "facts and circumstances within the officer's knowledge at the time of the arrest." <u>Gardenhire</u> v <u>Schubert</u>, 20 F.3d 303 (6th Cir. 2000).

Generally, a positive identification by an eyewitness, standing alone, is sufficient to establish probable cause. <u>Ahlers</u>, <u>supra</u>; <u>Wilson</u>, <u>supra</u>. Most eyewitness statements are entitled to a presumption of reliability and veracity, but the identification must be a reliable identification. <u>Ahlers</u>, <u>supra</u>. The identification will be considered to be unreliable if at the time of the arrest, there was an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he claims to have seen or was mistaken. <u>Id.</u>

In the case at hand, both Plaintiff was afforded a preliminary hearing, was represented by

counsel and had a full and fair opportunity to cross-examine all witnesses. Defendants concede that of the many witnesses listed by Officer Jimenez on the Investigator's Report/Warrant Request, only three identified Daron Caldwell in a live line-up or photograph show-up. As stated above, witnesses Aaron Edmondson and Christopher Thackaberry selected Plaintiff's photo in a photograph show-up and implicated Plaintiff in shootings at Hart Plaza. (Exh. F). Mr. Thackaberry claims to have seen the shooting and also testified at the preliminary examination. He testified that on the night of the shooting, he was taken to Police Headquarters, shown a photo array containing six photographs and asked if he could identify the shooter. He was asked the following at the preliminary examination by the Assistant Prosecuting Attorney ("APA") and answered:

**Q:** **Did the police ever set down a series of photographs and ask you to look at that and ask you to tell them whether you recognized the shooter or not?**

**A:** **Yes.**

**Q:** **Did that happen?**

**A:** **Yes.**

**Q:** **Okay. And did that happen?**

**A:** **That happened the evening following the shooting when I was at the hospital.**

**Q:** **And, did you pick out the shooter?**

**A:** **I don't know if he was the shooter.** (See Exhibit H - Preliminary Examination Transcript, pp. 66, 67).

A long exchange then occurred between the APA and defense counsel, Marlon Blake Evans, after which the following testimony was given by Mr. Thackaberry:

**Q:** **Okay. And, at that photo array were they asking you to identify the**

**person that was the shooter?**

**A:**     **Yes.**

**Q:**     **Okay. And, in response to them asking you to identify the person who was the shooter, did you in fact pick out No. 2?**

**A:**     **Yes.**

**Q:**     **So, you identify him as the shooter to the police. Is that correct?**

**A:**     **Yes, well, I told them that I seen that person.**

**Q:**     **Okay. But, at that point you knew they were asking you about the shooter?**

**A:**     **Well, I told them when they asked me, I said, you know, I mean it was dark and I didn't get, you know, I was looking straight at him, but when I made the police report that night I couldn't really remember too much about him or anything that night. And, when they showed me No. 2 was the one, I mean I had seen that person before.**

**Q:**     **Right. But, they asked you to identify the shooter, correct?**

**A:**     **Yes.**

**Q:**     **And, you did identify him as the shooter?**

**A:**     **Yes.** (Exh. H - pp. 70, 71).

Upon cross-examination by defense counsel, Mr. Evans, Mr. Thackaberry established that the officers who showed him the photographs exercised great caution and took great care not to influence or taint the identification process. He testified:

**Q:**     **And, the composite that they showed you did they take you away from the crowd and allow you to look at those photos?**

**A:**     **Yes, I was off. There was another table sitting there and they tole me, you know, look at them all and if you have to look away, watch TV for a second, whatever, look at them again, you know, make sure you're taking your time and you're seeing that you make the right choice.**

(Exh. H - p. 78).

On redirect, Mr. Thackaberry was asked the following and answered:

**Q:** **And, lastly, when you were asked to pick out the shooter they didn't tell you you had to pick out anybody. Is that correct?**

**A:** **No, they said, if he's not there, he's not there.**

**Q:** **They didn't put pressure on you?**

**A:** **No, no.**

**Q:** **And, not withstanding that fact you still picked out the person?**

**A:** **Yes.** (Exh. H - pp. 79, 80).

Doria Jackson also testified at the preliminary examination. During a live line-up, Ms. Jackson had positively identified Plaintiff as being present at the fireworks shooting. She did not see Plaintiff discharge a firearm, but stated that when she saw him get "up off the ground, (I) saw a gun where he was laying and he ran." (Exh. F). At the preliminary examination, Ms. Jackson testified consistently with the statement she had previously given. She testified on the night in question, she heard a noise, observed people running and then saw a male laying on a blanket she had positioned near Hart Plaza. She testified:

**Q:** **And, when you saw him get up and walk away did you notice something immediately in the area where he was?**

**A:** **Yes.**

**Q:** **What did you notice?**

**A:** **There was a gun right by the blanket.**

**Q:** **Okay. And how close was it to him?**

**A:** **Well, I couldn't see the gun until he got up.**

**Q:**     **You couldn't see the gun until he got up.  Is it you belief or observation that he was on the gun?**

**A:**     **Yes.**  (Exh. H - pp. 30, 31).

Ms. Jackson pointed to Plaintiff in the courtroom when asked if she saw the person who had fallen onto her blanket.  (Exh. H - pp. 31, 32).  She testified that she never saw the gun in Plaintiff's hand, but near where he had fallen onto her blanket and only after he got up.  (Exh. H - pp. 30-32).  She admitted at the examination that she had picked Plaintiff out of the police line-up as the person she had seen fall onto her blanket.  (Exh. H - p. 32).  She also testified that she remembered Plaintiff's fact because he looked like a professional basketball player she had seen before.  (Exh. H - p. 33).

Other witnesses also testified at the preliminary examination.  Some of the individuals stated that they had not seen the shooter; some stated that they had not seen the shooter sufficiently to provide a description or view a line-up; others gave varying descriptions of the attire, height and skin complexion of the shooter.  A total of nine witnesses testified, none of them Police Officers.

At the conclusion of the preliminary examination, Judge Martin-Clark determined that probable cause existed to bind Plaintiff over for trial.  In doing so, Judge Martin-Clark acknowledged that there was conflicting testimony concerning whether Plaintiff was the shooter.  In binding Plaintiff over, she ruled as follows:

> **THE COURT: Court reminds counsel, that at this stage of the proceeding, the showing of the People is the lessor threshold of probable cause and not the greater threshold of beyond a reasonable doubt, the way it will be at the next stage of the proceeding.**
>
> **What we have is a puzzle.  What we have is a puzzle.  And several pieces are being brought at preliminary exam stage of the proceeding.  That's circumstantial evidence.  But, at the preliminary exam stage of the proceeding the Court can use circumstantial evidence to establish whether the People have met their burden of proof.**

Ms. Jackson testified that a man who she identified as the defendant was laying on the groung during the shooting incident that occurred at Hart Plaza. She testified that she thought the man was laying on a gun because she did not see the gun until the man stood up. She further testified that the man was shaken several times in an effort to see if he was injured.

The Court thinks that that is strong circumstantial evidence. When the person laying on the ground did not respond one way or the other.

There is also testimony from another witness that the man got up and casually walked into the crowd.

The Court thinks that that is also strong circumstantial evidence with all the chaos going on, for a person to be laying on the ground and then to get up and casually walk away revealing a gun is circumstantial evidence.

The Court believes the People have established the burden of proof necessary for today's hearing.

The Court also finds that Mr. Thackaberry, who was very credible as a witness today, testified that Mr. Caldwell was the man he saw as the shooter.

The Court will acknowledge several witnesses were not clear about whom they saw or whether they saw anyone. And, there was some inconsistent testimony regarding whether Mr. Caldwell was that person. That is some of the witnesses acknowledge he was and some said that he was not. Some indicated that there was a bald-headed person lying on the ground, and some said they could not see his hair.

The Court is persuaded by the fact that at least two witnesses positively identified Mr. Caldwell as the shooter. There were two witnesses who indicated he was not the shooter.

The Court is not persuaded by the fact that some of the witnesses identified the person as being light skinned. Light skinned, dark skinned is relative. It means different things to different people. And without a color chart the Court cannot find that dark skin means the same thing to everyone, nor does light skin. The Court is not persuaded by that. Again, I say, it's a puzzle of circumstantial evidence, that the People have the burden of proving beyond a reasonable doubt at the next state of the proceeding.

But based upon the evidence presented today, the Court finds that the People have met their burden of proof with respect to Count 1, 3, 4, 5, 6, 9 and

**10.**

**There is probable cause to believe that the crimes charged in those counts were committed. Probable cause exist to believe they were committed in the City of Detroit. And probable cause exist to believe that the defendant committed each of the charges. And, so defendant will be bound over to the Criminal Division of the Circuit Court on the charges contained in the Complaint.** (Exh H - pp. 196-199).

In the case at bar, in the Court's Order granting, in part, and denying, in part (without prejudice), Defendants previously-filed Motion for Summary Judgment, this Honorable Court held that "(t)here is a question of fact regarding whether Plaintiff's formal arrest violated the Fourth Amendment." (See Opinion and Order on Defendants' Motion for Summary Judgment, Docket Item Number 28, page 23). This claim is asserted against Defendant Moises Jimenez in Counts II, IV and VI of Plaintiff's Amended Complaint, who as Officer-in-Charge of the Investigation, Plaintiff claims caused his detention and prosecution without probable cause. Plaintiff's repeatedly pleadings contend that Officer Jimenez caused him to be arrested "without an arrest warrant and probable cause as required by the Fourth Amendment to the U.S. Constitution." This allegation is blatantly untrue.

A review of the foregoing preliminary examination transcript makes it abundantly clear that Plaintiff was bound over based on statements given by the civilian witnesses, and not due to any statements or actions attributable to any City of Detroit Police Officers.

During the course of discovery in the civil matter, the deposition of Doria Jackson was taken. Ms. Jackson reiterated her preliminary examination testimony during her deposition and made it abundantly clear that she freely and voluntarily identified Plaintiff in the line-up and testified at the probable cause hearing. During her deposition, she testified that the day after the shooting, she viewed a line-up the DPD Homicide Section. Plaintiff's counsel asked her the following and she

answered:

> **Q:** People that they said was, a line-up that would include the shooter?
>
> **A:** No, they didn't say anything. They just wanted me to look at people in the line-up.
>
> **Q:** What would you think the purpose of looking at people in the line-up would be for?
>
> **A:** Well, I said wow, you found somebody already, and I said - -
>
> **Q:** Hold it, when you say you found somebody already, is that correct?
>
> **A:** Yes.
>
> **Q:** That is your question to the police?
>
> **A:** Yes.
>
> **Q:** So in your mind that was the shooter?
>
> **A:** So they said, no, we just want you to look in the lin-up to see if you can find the guy who was on your blanket. (See Exhibit I - Doria Jackson's Deposition Transcript, p. 30).

She then testified:

> **Q:** You spoke with who, you don't recall?
>
> **A:** No, we just went to jail, the jail part and stepped in the room with the people lined up, and I picked out your guy, Mr. Caldwell.
>
> **Q:** You picked him out, how long had you looked at that line-up before you picked him out?
>
> **A:** Well, it's a hallway and I looked, I walked, walk, walk, walk past the people as I looked at them and when I saw him, I stopped, because I thought I recognized him.
>
> **Q:** So you thought you recognized him?
>
> **A:** Yes, and I looked again at everybody one more time just to make sure

> that is the face I though I saw, and so I told the police that was the one
> I thought.
>
> **Q:**     How long did that take?
>
> **A:**     **About five minutes.**  (Exh. I - pp. 31, 32).

Upon examination by defense counsel at her deposition, Ms. Jackson testified as follows:

> **Q:**     **What was that conversation (with unknown Detroit Police Officers)?**
>
> **A:**     **I reiterated that, you know, I didn't see the shooter.  So I don't know
> what, you know, help this is going to be because the guy I'm, you know,
> described, or the only thing I can say that is that he was laying on the
> blanket.**
>
> **Q:**     **What was their response to you when you said that?**
>
> **A:**     **They said don't worry about that.  The police are conducting an
> investigation and, you know, this is just part of it.**
>
> **Q:**     **Did either of them say they wanted you to positively identify someone
> when you went down there and viewed the line-up?**
>
> **A:**     **No.**
>
> **Q:**     **Did either of them threaten you or coerce you to attempt to persuade you
> to say something other than what you told them you had observed?**
>
> **A:**     **No.**  (Exh. I - pp. 66, 67).

About viewing the line-up, Ms. Jackson testified:

> **Q:**     **Did anyone say anything to you about look at number one closely?**
>
> **A:**     **No.**
>
> **Q:**     **Or look at number ten closely?**
>
> **A:**     **No, nobody spoke.  That is why believed I was in the room by myself.**
> (Exh. I - p. 69).

She further testified:

**Q:** For what period of time did you have an opportunity to look at the people in the line-up; three minutes, two minutes, a minute?

**A:** Well, they didn't give me a time limit. They just said here are the folks. Look at them.

**Q:** No one attempted to rush you?

**A:** No.

**Q:** Or tell you to hurry up?

**A:** No.

**Q:** Did anyone try to coerce you into picking out one versus the other?

**A:** No.

**Q:** Did anyone say anything to you to suggest that you should pick Mr. Caldwell out?

**A:** No.

**Q:** Was there any conversation being had in the room amongst themselves, amongst the other people in the room?

**A:** Before I went in?

**Q:** As you were looking at the people in the line-up.

**A:** The only conversation I know is after I picked him. (Exh. I - pp. 71-73).

Ms. Jackson testified that she had no further contact with any Police Officer and was next contacted by the Prosecutor's Office to testify at the preliminary examination. (Exh. I - pp. 74, 75).

It must be noted that Plaintiff contends that he attempted to locate both Christopher Thackaberry, who picked Plaintiff out in the show-up and testified at the preliminary examination, Aaron Edmondson, who picked Plaintiff out in the show-up. According to Plaintiff's counsel, neither of the witnesses lives in Michigan and their depositions could not be taken.

Plaintiff's Amended Complaint alleges that Officer Jimenez "ignored" statements from witnesses who might have exonerated him. The contention is fallacious. Plaintiff was asked at his deposition whether he had any information related to alleged wrongdoing by Officer Jimenez. He was asked the following and answered:

Q:      **What are you claiming that Officer Jimenez did that was improper?**

A:      **What do you mean?**

Q:      **Do you understand the question?**

A:      **No.**

Q:      **Officer Jimenez, are you claiming that he - - you're suing him. Do you know you're suing him?**

A:      **Yes, I know I'm suing him.**

Q:      **What are you claiming that Officer Jimenez did that was improper?**

A:      **I don't understand what you mean.**

Q:      **What about Officer Augustus Davis?**

A:      **I don't even know the officers.**

Q:      **Do you know what any of the police officers did in this case that caused you to sue them?**

A:      **They kept me in jail and arrested me for no reason.**

        **MR. EVANS:          Good answer.**

**BY MS. CRITTENDON:**

Q:      **Do you know that Officer - -**

        **MS. CRITTENDON:          Not really.**

**BY MS. CRITTENDON:**

**Q:**     - - Officer - - I mean do you know that Derea (sic) Jackson gave a statement to the police?

**A:**     I don't even know Derea Jackson.

**Q:**     Did you since come to learn that she's the person who identified you in a lineup?

**A:**     No, I did not.

**Q:**     You didn't know that until I said it just now?

**A:**     Just now.

**Q:**     Do you have any information that any witnesses were forced to identify you either in person in a lineup or in a showup?

**A:**     I don't know.

**Q:**     Do you know if Christopher Thackaberry picked your picture out of the photo array?

**A:**     I don't know how they came up with me.

**Q:**     You don't have any information whatsoever?

**A:**     No.

**Q:**     Do you have - - has anyone since told you they were made or forced to say something by the City of Detroit Police Officers?

**A:**     I don't know.

**Q:**     Well, you do know if someone has told you that?

**A:**     I don't know that.

**Q:**     No one has told you that is the answer?

**A:**     No one has told me, but I don't known what they done.

**Q:**     Do you know if the City of Detroit police officers investigated anyone else

|       | for the shooting? |
| :---- | :---- |
| **A:** | **No, I do not.** |
| **Q:** | **You don't know?** |
| **A:** | **No.** |
| **Q:** | **Do you know if City of Detroit police officers withheld any information from the Wayne County Prosecutor's Office relative to this incident?** |
| **A:** | **I don't know what's going on. That's you all's part there.** (See Exhibit J -Plaintiff Daron Caldwell's deposition transcript - pp. 150-156). |

It is clear based on Plaintiff's deposition testimony that despite the allegations in Plaintiff's pleadings, there is absolutely no evidence that any Police Officer manufactured or withheld evidence to have Plaintiff arrested and bind him over for trial  Officer Jimenez included the names of all known witnesses on the Investigator's Report/Warrant Request and the Police Department made the Homicide File available to the Prosecutor's Office.  There is absolutely no evidence that any Defendant, including Officer Jimenez, violated any of Plaintiff's clearly established constitutional rights, nor has Plaintiff established how such rights were violated.  Consequently, Officer Jimenez is qualifiedly immune from liability on Plaintiff's constitutional claims.

### III. No Constitutional Violations Occurred for Which Defendant City of Detroit is Liable Pursuant to 42 USC § 1983

Generally, a governmental agency such as the City of Detroit, may be held liable for the violation of an individual's constitutionally protected rights only when the agency, acting through the execution of its policies or practices directly inflicts the injury.   Monell v Department of Social Services, 436 U.S. 685 (1978).  See also, Oklahoma v Tuttle, 471 U.S. 808 (1985); Canton v Harris, 498 U.S. 378 (1989).

Asserting the mere existence of a policy alone, however, is insufficient to create liability. Such may be a *formally adopted policy*, or *an informally developed* custom, practice, or procedure. Monell v Department of Social Services, supra; see also, Collins v Harker Heights, 503 U.S. 115 (1992). An act performed pursuant to a "custom" that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. Webster v Houston, 735 F.2d 838 (5th Cir. 1984). See also, Bennett v City of Sildell, 735 F.2d 861 (5th Cir. 1984) and 472 U.S. 1016 (1985); Barneir v Szentmiklosi, 810 F.Supp 594 (E.D. Mich 1987). (Although 6th Circuit does not require a heightened pleading standard, a complete failure to plead a policy or custom requires dismissal. Laise v City of Utica, No. 96-40232, 1997 US Dist Lexis 10267 (E.D. Mich, July 14, 1997, citing, Fluellen v US Department of Justice Drug Enforcement Administration, 816 F Supp 1206 (E.D. Mich 1993), citing Foster v Walsh, 864 F2d 416 (6th Cir. 1988)); See also, Adickes v S.H. Kress & Co., 398 U.S. 144 (1970), cited by Monell at 690-691. A plaintiff must also demonstrate the policy or practice was, in fact, promulgated by policy making authority, it was unconstitutional on its face or in its application, and that it was the moving force behind Plaintiff's injuries. Monell v Department of Social Services, supra; Gonzales v Ysleta Independent School District, 996 F.2d 745 (5th Cir. 1993). Summary judgment is proper absent a specific claim or showing of a custom policy or practice *which leads to* deprivation of a constitutional protected that a plaintiff alleges. City of Canton v Harris, 498 U.S. 376 (1989).

In the case at hand, in the Court's Order granting, in part, and denying, in part (without prejudice), Defendants previously-filed Motion for Summary Judgment, this Honorable Court held that "there is a question of fact" with respect to whether the City of Detroit was deliberately

indifferent to whether its customs, policies or practices caused Plaintiff to suffer constitutional violations by failing to make policy revisions required by two Consent Judgments entered into between the City of Detroit and the Department of Justice in United States District Court Case Number 03-72258. (See Opinion and Order on Defendants' Motion for Summary Judgment, pages 28, 29). Plaintiff contends in Count VII of his Amended Complaint that the City of Detroit is liable under § 1983 for failure to train and supervise its officers. In support of this allegation, Plaintiff refers to the two Consent Judgments entered into between the City of Detroit and the Department of Justice. Plaintiff alleges that a report prepared by an Independent Monitor selected to monitor revisions made by the Detroit Police Department in an effort to achieve compliance with the Consent Judgments constitutes evidence that the City of Detroit has continued to violate the constitutional rights of citizens in the same manner that Plaintiff claims his rights were violated. Plaintiff's reliance on the reports of the Independent Monitor is misplaced. Even assuming, *arguendo*, that Plaintiff could establish that the City of Detroit has failed to achieve compliance in certain areas related to the Consent Judgments, such evidence would be irrelevant to the case at bar. As discussed above, Plaintiff was not deprived of any constitutionally protected rights and the City of Detroit, therefore, cannot be held liable to Plaintiff on a § 1983 claim.

## **PRAYER FOR RELIEF**

**WHEREFORE,** predicated upon the facts presented and the authorities cited above, Defendants respectfully request the court dismiss this action, with prejudice, for the reasons detailed above and in the accompanying Motion Brief in Support.

Respectfully submitted,

                               s/ Krystal A. Crittendon_____

                               Assistant Corporation Counsel

                               CITY   OF   DETROIT   LAW   DEPARTMENT

                               1650 First National Building

                               Detroit, Michigan 48226

                               (313) 237-3018

                               critk@law.ci.detroit.mi.us.

                               (P49981)

DATED:      July 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2007, I electronically filed the foregoing paper with the Clerk

of the Court using the ECT system, which will send notification of such filing to the following:

**MARLON BLAKE EVANS (P49541)**
Attorney for Plaintiff
**Marlon Blake Evans & Associates**
Attorney for Plaintiff
3434 Russell Street, Suite 104
Detroit, MI   48207
(313) 962-2335
marlonbevans.asoc@sbcglobal.net


and I hereby certify that I have mailed by United States Postal Service the paper to the following

non-ECF participants: N/A.

Respectfully submitted,


 s/ Krystal A. Crittendon
Assistant Corporation Counsel
CITY   OF   DETROIT   LAW   DEPARTMENT
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018
critk@law.ci.detroit.mi.us.
(P49981)


Dated:          July 2, 2007