**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DARON CALDWELL,**

      **Plaintiff,**

**vs**
                                     **Case No: 04-74998**
                                     **Honorable Victoria A. Roberts**

**CITY OF DETROIT, ET AL,**

      **Defendants.**
_____/

**OPINION AND ORDER**

**I.     INTRODUCTION**

This matter is before the Court on Motion for Summary Judgment. Defendants'

Motion is **GRANTED**.

**II.    BACKGROUND**

Plaintiff Daron Caldwell filed this 42 U.S.C. §1983 action against the City of

Detroit and Detroit Police Officers Moises Jimenez, Anthony Johnson ("A. Johnson"),

Augustus Davis, Kenneth Johnson ("K. Johnson"), and Rufus Stewart. Plaintiff was

arrested and charged with multiple crimes after a shooting on June 23, 2004 in the City

of Detroit during the Hart Plaza Freedom Festival Fireworks. Nine people were shot.

One victim died several months later.

The Detroit Police Department ("DPD") received a number of tips immediately

following the shooting, including an anonymous tip that Plaintiff may have been

involved. Based on that tip, several officers surveilled Plaintiff's home on June 24,

2004. When Plaintiff left his home and got into a car, the officers followed him to a

1

barber shop. Officers stopped Plaintiff when he got out of his car and took him to the precinct.

The parties dispute whether Plaintiff voluntarily agreed to go with the officers for questioning or whether the officers arrested him and compelled him to go. Which officers participated in the arrest/ voluntary conveyance is in dispute as well.

Defendants present evidence that three witnesses (one of whom was a shooting victim) positively identified Plaintiff the same day he was picked up. Defendants' records show that two of the witnesses, Aaron Edmundson and Christopher Thackaberry, picked Plaintiff out of a photo "show-up" and identified him as the shooter. A third witness, Doria Jackson, identified Plaintiff in a line-up. Ms. Jackson was quoted as saying that she saw a gun laying on the ground near Plaintiff after he stood up and ran. She did not indicate that she saw him fire the gun.

That evening, with the three identifications and information from a number of other witnesses who gave varying accounts and descriptions of the perpetrator, Jimenez prepared an Investigator's Report/Warrant Request and presented it to the Wayne County Prosecutor's office. Jimenez's report purported to list the witnesses and a summary of their statements. He says he also made the DPD file containing the witness statements and other evidence gathered available to the prosecutor.

The same evening it received Jimenez's report, the Wayne County Prosecutor's Office requested a warrant. The DPD formally arrested Plaintiff and charged him with nine counts of assault with intent to commit murder, one count of felon-in-possession, and one count of felony firearm.

Two weeks later, Judge Miriam B. Martin-Clark of the Thirty-Sixth District Court

conducted the Plaintiff's preliminary examination.  After hearing the testimony of nine witnesses, including Mr. Thackaberry and Ms. Jackson, the court bound Plaintiff over for trial.  Jackson's testimony was consistent with her statements at the line-up. Thackaberry, however, said that he was not 100% sure Plaintiff was the shooter.  But, he said Plaintiff closely resembled the shooter.

Judge Martin-Clark noted that witnesses gave conflicting accounts and descriptions, some of the witnesses could not positively identify Plaintiff, and two affirmatively stated that he was not the shooter.  Nevertheless, the Court found that the circumstantial evidence and  Thackaberry and  Jackson's testimony were sufficient to establish probable cause.

Defendants argue that the probable cause finding in the state court bars Plaintiff's §1983 action here, and that the Defendant officers are entitled to qualified immunity.  Plaintiff says his claim is not barred because the warrant was issued based upon false representations by Jimenez concerning the evidence against him.  Plaintiff contends that Jimenez: (1) falsely asserted that a number of witnesses positively identified him as the shooter and (2) omitted exculpatory evidence.  Among other things, Plaintiff disputes whether Edmundson actually identified him as the shooter. Edmundson states in an affidavit that he did not pick Plaintiff out of the photo show-up, although one of the officers present attempted to influence him to select Plaintiff by placing his thumb next to Plaintiff's photograph.  Edmundson says that he told the officers that the shooter was not in the photo array and offered to give information about the person he believed to be the real perpetrator.  Per Edmundson, the officers were not interested in the description he offered.  While Jimenez was one of the officers who

conducted the photo show-up, Edmundson does not identify who allegedly attempted to influence his identification.

Plaintiff says that Thackaberry's identification was not reliable. According to the notes on the Showup & Photo Identification Record, Thackaberry identified Plaintiff as the shooter, but qualified it by stating that it was dark. And, Thackaberry gave a statement the day before which Plaintiff contends included an inconsistent description. Thackaberry said that the shooter was "dark skinned" and "skinny." Def. Exh. F. Plaintiff contends that neither characteristic accurately describes his appearance at the time.

About three months after the preliminary examination, the Wayne County Prosecutor moved to dismiss the charges against Plaintiff without prejudice because forensic evidence indicated that his DNA did not match the physical evidence at the scene of the shooting. Plaintiff was in custody for over 100 days.

Plaintiff maintains his innocence; he denies even being in Hart Plaza that night. To date, no one else has been charged with the shooting.

In his Amended Complaint, Plaintiff alleges: 1) Count I--false arrest and imprisonment (Officers A. Johnson, Davis, K. Johnson, and Stewart); 2) Count II--false arrest and imprisonment (Officer Jimenez); 3) Count III--malicious prosecution (Officers A. Johnson, Davis, K. Johnson, and Stewart); 4) Count IV--malicious prosecution (Officer Jimenez); 5) Count V--illegal seizure in violation of 42 U.S.C. §1983 and state law (Officers A. Johnson, Davis, K. Johnson, and Stewart);  6) Count VI--illegal seizure in violation of 42 U.S.C. §1983 and state law (Officer Jimenez); 7) Count VII--illegal seizure in violation of 42 U.S.C. §1983 and state law (City of Detroit).

Defendants City of Detroit, Jimenez, and A. Johnson request summary judgment on all counts. They point out, and Plaintiff admits, that the remaining Defendants were not served with the Amended Complaint.

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*,

48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV. APPLICABLE LAW AND ANALYSIS

### A. Parties

Plaintiff filed an Amended Complaint and Jury Demand on April 12, 2006. In his Amended Complaint, Plaintiff added three Detroit Police Officers who were not named in the original Complaint -- Augustus Davis, K. Johnson, and Rufus Stewart. However, Plaintiff failed to serve them. Consequently, they have not made an appearance and did not join in this Motion. Nonetheless, Plaintiff asks to proceed against these three because he believed that defense counsel for the original Defendants -- City of Detroit, Jimenez, and A. Johnson -- "tacitly" accepted service on behalf of the newly added officers. However, Plaintiff does not indicate the basis for his belief other than the fact that defense counsel represents the original Defendants.

Plaintiff's "belief" is not a substitute for proper service. Service of process or a

waiver of service of process is required before the Court may exercise personal jurisdiction over a defendant. *Murphy Brothers, Inc. v Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999). Under FRCP 4(e), Plaintiff was required to serve Davis, K. Johnson, and Stewart in accordance with Michigan law, or by: 1) delivering a copy of the summons and complaint to them personally; 2) leaving copies at their homes or "usual place of abode;" or 3) delivering a copy to an agent authorized by appointment or law to receive service of process. Michigan law allows a plaintiff to serve individuals personally or via registered or certified mail. M.C.R. §2.105(A).

Defense counsel denies that she was authorized to accept service on behalf of the added three officers, and Plaintiff has not established otherwise. The Court finds that it does not have personal jurisdiction over Defendants Davis, K. Johnson, or Stewart, and *sua sponte* dismisses Counts I, III and V against them. Inasmuch as the statute of limitations has passed on these claims asserted against them, the dismissal is with prejudice. *See Chippewa Trading Co. v Cox*, 365 F.3d 538, 543 (6th Cir. 2004) (Applying Michigan's personal injury statute of limitations in M.C.L. §600.5805(10), there is a three-year statute of limitations for §1983 claims); M.C.L. §600.5805(2) (two-year statute of limitations for false imprisonment); M.C.L. §600.5805(5) (two-year statute of limitations for malicious prosecution).

**B.    Initial Detention**

Plaintiff alleges that he was wrongfully arrested at two junctures: 1) when he was initially detained at the barber shop and conveyed to the precinct, and 2) when he was formally arrested after a warrant issued. Three claims are based on his arrest at the barbershop -- state law claims of false arrest and imprisonment (Count I) and malicious

prosecution (Count III), and a 42 U.S.C. §1983 claim of illegal seizure (Count V).
Plaintiff alleges these claims against A. Johnson, and the unserved three officers.  For
reasons already stated, the Court analyzes these claims with respect to A. Johnson
only.

A. Johnson seems to request that the claims against him be dismissed pursuant
to FRCP 12(b)(6), rather than summary judgment.  However, as explained more fully
below, the Court must treat Defendant's motion as one for summary judgment because
A. Johnson presents, and the Court relies upon, evidence outside the pleadings.  *See*
FRCP 12(b)(6) ("If, on a motion asserting the defense numbered (6) to dismiss for
failure of the pleading to state a claim upon which relief can be granted, matters outside
the pleading are presented to and not excluded by the court, the motion shall be treated
as one for summary judgment and disposed of as provided in Rule 56.").

The Court grants A. Johnson's motion on all claims.  There is no evidence to
support one important premise – that A. Johnson participated in the conveyance of
Plaintiff from the barbershop to the precinct.  Plaintiff alleges he was arrested at the
barbershop without probable cause and that A. Johnson was one of several officers
who placed him under arrest.  However, A. Johnson states in an affidavit that he only
participated in surveillance at Plaintiff's home.  Def. Exh. D at ¶¶2, 4-7.  A. Johnson
says he had no contact with Plaintiff and he did not join other officers who followed
Plaintiff to the barbershop.

Plaintiff contends that A. Johnson's claim is refuted by Davis' Preliminary
Complaint Reports ("PCR") and Jimenez's report listing Davis and A. Johnson as the
arresting officers.  Close inspection, however, reveals that Davis' reports do not

contradict A. Johnson.

Davis prepared two PCRs which are virtually identical and purportedly describe his surveillance and stop of Plaintiff. The distinction between the two reports is that Davis characterizes the interaction with Plaintiff as an "arrest" in one report and a voluntary "conveyance" in the other. Pl. Exh. C. However, the substance of the two reports as they pertain to A. Johnson is the same. Davis describes his and A. Johnson's surveillance of Plaintiff's home. When he describes what occurred at the barbershop though, Davis only refers to his own observations and does not mention A. Johnson:

> Writer and Police Officer Anthony Johnson were assigned the task of a fixed surveillance on the location of 3830 Leslie. Writer and Officer Johnson observed the above listed vehicle pull up in the driveway of the target location and drop off a black female, [sic] Moments later the vehicle backed out of the driveway and drove westbound on Leslie to Holmur. Then northbound on Holmur to Waverly, then turned eastbound on Waverly to Dexter, then turn [sic] southbound on Dexter and parked on Dexter south of Tyler. Writer observed the above named subject exit the vehicle and walk northbound on Dexter. Writer parked his undercover vehicle south of the subject's vehicle and called for assistance via radio from District 2 dispatcher and V.C.T.F. crew. Writer along with responding scout cars from the 10th pct and V.C.T.F. members observed the above named subject standing in the doorway of a barbershop on Dexter near Tyler. Mr. Caldwell was investigated, arrested and conveyed [or was investigated and consented to being conveyed] to the Homicide Section (SAS) for processing.

Pl. Exh. C. Davis' PCRs are consistent with A. Johnson's claim that he did not participate in Plaintiff's arrest/voluntary conveyance.

Plaintiff correctly points out that Jimenez referred to Davis and A. Johnson as the arresting officers in his Investigator's Report/Warrant Request. However, Jimenez was not present when Plaintiff was arrested/voluntarily conveyed and Plaintiff acknowledges

that he (Jimenez) apparently relied upon Davis' report for his characterization of A. Johnson's participation:

> 38.  Police Officer A. Davis, Badge #955, and
> 39.  Police Officer A. Johnson, Badge #437, WTT, making the arrest of the defendant. ***See Report.***

Def. Exh. G (emphasis added); Pl. br. at p. 5.

Therefore, Jimenez's report is insufficient to raise a question of fact concerning A. Johnson's involvement in Plaintiff's arrest/voluntary conveyance to the police precinct.

Because A. Johnson's affidavit denies involvement in Plaintiff's arrest/voluntary conveyance and is unrefuted, his motion to dismiss Counts I, III and V is granted.

## C.    Arrest Following Issuance of Warrant

Plaintiff's allegations in Count II (false arrest and imprisonment), IV (malicious prosecution), and VI (illegal seizure in violation of §1983) are directed solely at Jimenez and are based on events leading to his formal arrest. Plaintiff argues that Jimenez withheld evidence and made false representations in his Investigator's Report/Warrant Request which misled prosecutors, the magistrate who issued the arrest warrant, and Judge Martin-Clark. Jimenez asserts qualified immunity on Plaintiff's Fourth Amendment claim. He also argues that Plaintiff's claims fail on the merits because the state court already found that there was probable cause to support the charges against Plaintiff. Defendant says that ruling may not be relitigated here.

### i.    Illegal Seizure in Violation of 42 U.S.C. §1983 (Count VI)

42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). It is undisputed that Jimenez acted under color of state law. Plaintiff alleges he was deprived of his Fourth Amendment right to be arrested only with probable cause. Jimenez, however, denies any constitutional violation and asserts that he is entitled to qualified immunity in any event.

When qualified immunity is raised, the better approach is to determine first whether a constitutional violation is established:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.
>
> * * *
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v Katz*, 533 U.S. 194, 201 (2001)(internal citation omitted). The Court finds probable cause supported the warrant application. Therefore, Plaintiff failed to establish a Fourth Amendment violation.

"The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause." *Vakilian v Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). As Jimenez asserts, "[i]n a civil rights case, investigators are entitled to rely upon a judicially-secured arrest warrant as satisfactory evidence of probable cause." *Id*. However, Plaintiff is correct that "an officer [or investigator] cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id*. But, Plaintiff must establish: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id. See also Wilson v Russo*, 212 F.3d 781, 786 (3rd Cir. 2000). Plaintiff's claim fails on the second prong.

### a. Plaintiff Establishes the First Prong: Defendant Stated a Deliberate Falsehood or Showed Reckless Disregard for the Truth

"An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson*, 212 F.3d at 788 (*quoting United States v Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). False assertions "can be made with reckless disregard for the truth even if they involve minor details--recklessness is measured not by the relevance of the information but the demonstration of willingness to affirmatively distort the truth." *Id*.

For the first prong, Plaintiff alleges that Jimenez's deliberate or reckless disregard for the truth is demonstrated by a number of misrepresentations and

omissions in his Investigator's Report/Warrant Request. Specifically, Plaintiff asserts

that Jimenez 1) misrepresented the statements of five witnesses – Doria Jackson,

Aaron Edmundson, Christopher Thackaberry, Brandon Patterson, and Selena Greeley,

2) omitted the fact that a number of witnesses and anonymous tipsters named other

suspects or gave descriptions which were inconsistent with his physical characteristics,

and 3) failed to disclose all known witnesses.

### 1.    Misrepresentations

A reasonable juror could find that Jimenez misrepresented three of the five

statements, and that he did so with reckless disregard for the truth. First, Jimenez

incorrectly stated that Doria Jackson positively identified him as the shooter. Pl. Exh. D.

In fact, Defendant indicates in the Showup & Photo Identification Record that Jackson

only stated that she saw Plaintiff at the scene laying on the ground, and that she saw a

gun on the ground when he got up and ran. Pl Exh. L.

Second, Jimenez stated in his report that Aaron Edmundson identified Plaintiff

"via photo." Pl. Exh. D. In the Showup & Photo Identification Record, Jimenez also

quoted Edmondson as saying Plaintiff "is the guy that was shooting." Pl. Exh. L.

However, Edmondson denies Jimenez's claim. Pl. Exh. M. Edmondson says that he

told Jimenez that none of the men in the photo array was the shooter. Edmondson's

denial creates a question of fact regarding whether Jimenez falsely stated that

Edmondson positively identified Plaintiff as the shooter.

Lastly, Jimenez stated in his report that Patterson described Plaintiff. In fact,

Patterson only said that the shooting came about when one of his friends had an

altercation with two black males, one of which was the shooter whom he described as

"dark skinned" wearing a black shirt. Pl. Exh. J. Reasonable jurors could find that Jimenez should have had serious doubts about the accuracy of his assertion that Patterson described Plaintiff when he only gave the complexion of the shooter. The subjectivity of his and Jimenez's perception of (medium versus dark) complexion aside, Patterson did not offer sufficient details about the perpetrator's appearance to reasonably characterize his statement as a description.

However, Plaintiff failed to establish that Jimenez deliberately or recklessly misrepresented the statements of Thackaberry or Greeley. Plaintiff asserts that Jimenez's assertion that Thackaberry identified him as the shooter is false because Thackaberry testified at the preliminary exam hearing that he only told officers that: 1) Plaintiff was "someone [he] ha[d] seen that night," 2) "if any of those people [in the photo array] are [the shooter]" Plaintiff was the one, and 3) Plaintiff closely resembles the person that [he] believe[s] may have committed the crime." Pl. Exh. G at pp. 72-73. Plaintiff argues that the totality of Mr. Thackaberry's testimony shows that he did not identify Plaintiff as the shooter; he merely said that Plaintiff was a familiar face who resembled the shooter. Plaintiff's characterization of Mr. Thackaberry's testimony, however, is not entirely accurate.

On the night of the shooting, Thackaberry stated that he was in the immediate vicinity of the shooting and saw the perpetrator fire the weapon. Pl. Exh. J. He only described the shooter as a "black male, dark skinned, wearing a white t-shirt" who "looked like he was skinny." *Id*. At the show-up the next day, Thackaberry selected Plaintiff from the photo array and was quoted as saying "I would say it's [Plaintiff] but it was dark, but that would be him, he was backing away." Pl. Exh. L. At the preliminary

examination, Thackaberry acknowledged his statement at the show up, but then said he could not be sure that Plaintiff was the shooter.  Pl. Exh. G at pp. 71-72.  When asked about what he told officers at the show up, however, Thackaberry did not deny that he positively identified Plaintiff as the shooter at that time:

Q:      [A]t that photo array were they asking you to identify the person that was the shooter?

A:      Yes.

Q:      [I]n response to them asking you to identify the person who was the shooter, did you in fact pick out [Plaintiff]?

A:      Yes.

* * *

Q:      So, you identif[ied] [Plaintiff] as the shooter to the police.  Is that correct?

A:      Yes, well, told them I seen that person.

Q:      Okay.  But, at that point you knew they were asking you about the shooter.

A:      Well, I told them when they asked me, I said you know, I mean it was dark and I didn't get, you know, I was looking straight at him, but when I made the police report that night I couldn't really remember too much about him or anything that night.  And, then when they showed the photos, [Plaintiff] was the one, I mean I had seen that person before.

Q:      Right.  But, they asked you to identify the shooter, correct?

A:      Yes.

Q:      And, you did identify him as the shooter?

A:      Yes.

Pl. Exh. G at pp. 70-71.

On cross examination, Thackaberry said that he also told officers that Plaintiff

was "someone [he] ha[d] seen that night," and that if any of the people in the photo array was the shooter, Plaintiff was the one. Contrary to Plaintiff's assertion, however, Thackaberry did not testify that he told the officers that Plaintiff "closely resembled" the shooter. He only agreed with that statement at the hearing. *Id* at p. 73.

To be sure, Thackaberry's identification was equivocal. However, it was not so equivocal that Jimenez's assertion in his report that Thackaberry identified Plaintiff as the shooter could reasonably be described as false. Thackaberry was in proximity to the shooter, and, although he qualified his identification by noting that it was dark, he stated twice that Plaintiff was the person he saw fire a weapon into the crowd. Thackaberry did not affirmatively state that he was unsure until he testified at the preliminary examination. For these reasons, the Court finds that Plaintiff has not shown that Jimenez deliberately or recklessly mischaracterized Thackaberry's statement.

Jimenez also did not misrepresent Selena Greeley's statement. Jimenez reported that Greeley observed an altercation and gave a description of the suspects involved. In her statement, Greeley said that she saw four to six black males arguing on two separate occasions. Pl. Exh. J. During the second argument she heard 20 gun shots, but did not see anyone with a gun. She described four of the men. Each description varied in one or more respects from Plaintiff's physical characteristics. Because he does not match any of the descriptions given by Greeley, Plaintiff says Jimenez's report was false. However, Jimenez did not represent that Greeley identified him as the shooter or otherwise; he stated that she described an altercation and the participants. This is an accurate summation of Greeley's statement.

In sum, Plaintiff presented sufficient evidence that Jimenez either deliberately or

with reckless disregard misrepresented the statements of Jackson, Edmondson, and Patterson. His evidence is insufficient as it pertains to Thackaberry and Greeley.

## 2. Omissions

"[O]missions are made with reckless disregard if an officer withholds a fact . . . [although] any reasonable person would have known that [it] was the kind of thing the judge would wish to know." *Wilson*, 212 F.3d at 788 (quotation marks and citations omitted). "[A]n officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." *Id* at 787.

Plaintiff contends that Jimenez deliberately omitted exculpatory evidence because he: 1) failed to indicate in his report that a number of listed witnesses gave descriptions of the shooter which did not match his hairstyle, age or complexion, 2) failed to indicate that anonymous tipsters either gave conflicting physical descriptions or identified other suspects, and 3) did not list all of the witnesses (although Plaintiff does not identify who was omitted).

Based on the Court's review of the exhibits Plaintiff cites, Plaintiff only established that Jimenez failed to list William Edmondson, who was unable to identify anyone from the photo array. Pl. Exh. L. Jimenez listed all other identified witnesses and either indicated that they described an "unknown male" or referred the reader to their statement. Jimenez did not affirmatively point out that the descriptions given by many witnesses conflicted in one or more respects with Plaintiff's physical characteristics. He also did not note the anonymous tips. But, he states in an affidavit that he "tendered all existing evidence, statements, information, etc., discovered during

17

[his] investigation" to the Wayne County Prosecutor's Office, along with his report. Def. Supp. Reply, Exh. A at ¶17. His claim is unrefuted. Therefore, contrary to Plaintiff's claim, Defendants have shown that the prosecutor and magistrate were given all of the statements and other evidence gathered at the time the warrant request was made, including the Showup & Photo Identification Record for William Edmondson and records of anonymous tips. Plaintiff failed to make a prima facie showing that any evidence was withheld from the prosecutor or magistrate.

> **b.  Plaintiff Failed to Establish the Second Prong: That the Misrepresentations were Material to the Probable Cause Determination**

While Plaintiff presented evidence of deliberate or reckless misrepresentations, he failed to establish that those misrepresentations were material to the finding of probable cause. *Vakilian*, 335 F.3d at 517.

"To determine the materiality of misstatements and omissions, [courts must] excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789. *See also Vakilian*, 335 F.3d at 517 (A plaintiff "must show that the judge would not have issued the warrant without the allegedly false material."); *Hale v Kart*, 396 F.3d 721, 727 (6th Cir. 2005)(same).

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson*, 212 F.3d at 789. *See also Crockett v Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). "An eyewitness identification will constitute sufficient probable

cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.  This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." *Ahlers v Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)(internal quotation marks and citations omitted).  However, inculpatory evidence may not be considered in isolation; probable cause must be assessed based on the totality of the circumstances, including inculpatory and exculpatory evidence.  *Gardenhire v Schubert*, 205 F.3d 303, 317 (6th Cir. 2000); *Ahlers,* 212 F.3d at 790.

Plaintiff essentially asserts that the warrant application should have shown that: 1) Thackaberry equivocated in his statement that Plaintiff was the shooter; 2) there was one witness -- Jackson -- who placed Plaintiff at the scene near a gun, but who did not see him fire the weapon; 3) Patterson identified a black, male suspect, but failed to give sufficient identifying characteristics to conclude that Plaintiff was the person he saw; and 4) Aaron Edmundson did not select Plaintiff from the photo array and claimed to have information about another suspect.

The Court finds that even with these corrections, there was probable cause to support the warrant.

Considering the circumstances under which the incident occurred (at night, in the midst of a large crowd, during a fireworks display) and that there were a number of witnesses who gave conflicting descriptions of the shooter, one could argue that Thackaberry's equivocal positive identification was insufficient standing alone to

establish probable cause.  However, Thackaberry's identification is buttressed by Jackson's unequivocal identification which placed Plaintiff at the scene near a gun. There is nothing which suggests that either Thackaberry or Jackson was dishonest in recounting recollections, and the only evidence which suggested that their collective identifications were mistaken when the warrant application was submitted was the conflicting descriptions of the shooter given by other witnesses.  However, the fact that a number of witnesses gave descriptions which did not match Plaintiff does not negate the positive identifications by Thackaberry and Jackson inasmuch as the conflicting descriptions were not conclusively exculpatory; indeed, a number came from anonymous sources and there were many conflicts among the various descriptions.

Under analogous facts, the Third Circuit in *Wilson v Russo, supra*, declined to find probable cause was lacking.  In *Wilson*, police arrested plaintiff for the armed robbery of a floral shop after an employee in a nearby dental office identified him as a patient with a heroin addiction whom she believed fit the description of the perpetrator and whom she saw in the area at the time of the robbery.  One of two eyewitnesses selected plaintiff from a photo array.  In his warrant request, the officer advised the magistrate that one witness positively identified plaintiff and that another person saw him in the vicinity.  However, the officer failed to advise that: 1) plaintiff's driver license abstract and criminal history listed his height (5'10" to 5'11") as significantly shorter than the perpetrator the witnesses described (6'2" to 6'5"), 2) the office which compiled the photo array was not aware of the physical description given by the witnesses; 3) one of the two eyewitnesses did not identify plaintiff; 4) the dental employee placed plaintiff in the area outside the floral shop at a time when the eyewitnesses said the perpetrator

was already inside the shop; in fact, the officer stated that the dental employee placed plaintiff in the area at 3:00 p.m., although she actually said she saw him at 3:30 p.m., and 5) height and weight were not indicated on the photo array.

The *Wilson* Court found that a reasonable officer would have known that the significant height differential and the fact that one eyewitness did not identify plaintiff was the kind of information a judge would want to know. The court also found that the officer had reason to doubt the accuracy of his assertion that the dental employee saw plaintiff in the area near the floral shop at 3:00 p.m, rather than at 3:30 p.m. as she actually stated. The court ultimately found, however, that the officer's errors and omissions did not negate probable cause.

The *Wilson* court found that the one positive eyewitness identification was strong evidence because the witness exhibited a high level of certainty, only three days had passed when she made the identification, and she had an extended opportunity to view the perpetrator because he lingered in the shop for a period of time before committing the robbery. The court noted that the one witness' identification was undermined by the fact that it was incompatible with her description of the robber's height. However, the court stated that "this indication of unreliability does not, from the vantage point of the arresting officer, fatally undermine the forceful positive identification." And, the Court found it significant that the dental employee placed the plaintiff in the area at the time of the robbery.

The court noted that the officer should have advised the judge of the facts it found to be deliberate or reckless errors and omissions, including that the dental worker's identification did not fit the timeline. However, when the inculpatory and

21

exculpatory facts were balanced, the court found that no reasonable jury could find that probable cause was lacking. The court stated that "[the] exculpatory facts, when weighed against the inculpatory facts, are not strong enough to undermine a finding of probable cause." 212 F.3d at 791-792.

Likewise here, when Thackaberry and Jackson's identifications are weighed against the varying descriptions of other witnesses, there was probable cause to support the arrest warrant notwithstanding the misrepresentations in Jimenez's report. While Thackaberry was equivocal in his identification, Jackson was not. She did not waiver or qualify her identification. So, the corrected warrant application would have shown that Thackaberry was in a position to have seen the shooter at close proximity, he chose Plaintiff from the photo array with some qualification, Jackson unequivocally placed Plaintiff in the area, during the shooting, near a gun, and a number of witnesses and anonymous tipsters offered conflicting descriptions or identified other suspects.

On balance, reasonable jurors could not disagree that the conflicting witness statements and unsubstantiated tips were not sufficiently exculpatory to negate the positive identifications by Thackaberry and Jackson, which were entitled to greater weight. Plaintiff failed to establish a Fourth Amendment violation based on the errors in Defendant Jimenez's report.

Plaintiff makes two additional arguments in his §1983 claim against Jimenez. He argues that there is a question of fact regarding whether Jimenez violated his due process rights under *Brady v Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence from defense counsel and the Wayne County Prosecutor's Office, and that Jimenez's use of a photo show up (instead of a line-up) was improper and increased the

possibility of an unreliable identification. Plaintiff has not established, however, that he can base his §1983 claim on either assertion.

First, Plaintiff does not allege a *Brady* violation in his Amended Complaint. And, in any event, such a claim is not viable against an officer inasmuch as *Brady* held that it is a *prosecutor's* duty to disclose exculpatory evidence to a criminal defendant. 373 U.S. at 87 (emphasis added). *See also Johnson v Scheidler*, 2007 W.L. 1119876, *10 (E.D. Mich. 2007)("[Since the prosecuting attorney bears the ultimate responsibility for disclosing exculpatory evidence to a criminal defendant when that evidence is known to the prosecutor, Plaintiff . . . cannot maintain a § 1983 due process claim, based on a *Brady* violation, against Defendant police officer.").

Second, Plaintiff is correct that under Michigan law, "[i]dentification by photograph should not be used 'when a suspect is in custody or when he can be compelled by the state to appear at a corporeal lineup.'" *People v Strand,* 213 Mich. App. 100, 104 (1995)(*quoting People v Kurylczyk,* 443 Mich. 289, 298, n. 8 (1993)). But, Plaintiff has not shown that he was in custody when the two photo show-ups (which were attended by counsel on Plaintiff's behalf) were conducted, or, even if he were, that Jimenez's failure to conduct a line-up gives rise to a §1983 (or any other civil) claim.

For these reasons, Jimenez's motion for summary judgment on Count VI is granted. Plaintiff failed to establish that Jimenez arrested him without probable cause. Accordingly, it is not necessary for the Court to reach Jimenez's claim that he is entitled to qualified immunity.

### ii. False Arrest (Count II)

Under Michigan law, "[l]iability for false arrest and false imprisonment attaches

only when the claimant is arrested without probable cause." *Ahlers*, 188 F.3d at 374. Because Plaintiff failed to establish that any of the named and *served* Defendants "arrested" him at the barbershop, and there was probable cause for Plaintiff's formal arrest after a warrant was issued, he failed to raise a question of fact on his false arrest claim. Jimenez's motion for summary judgment on Count II is granted.

### iii.    Malicious Prosecution (Count IV)

One element of a state law malicious prosecution claim is lack of probable cause. *Rivers v. Ex-Cell-O Corp*, 100 Mich. App. 824, 832 (1981). Where there has been a finding of probable cause in state court, a plaintiff is precluded from relitigating the state court ruling in a subsequent §1983 action. *Hinchman v Moore*, 312 F.3d 198, 202 (6th Cir. 2002).

Plaintiff correctly points out that there is no such bar if the magistrate or judge's probable cause determination was based on false information presented by an officer. *Id*; *Peet v City of Detroit*, 2007 W.L. 2768298, *8 (6th Cir. 2007). But, here, only civilian witnesses testified, and, the state court relied solely upon that civilian testimony; it did not rely upon Jimenez's report or his testimony to find probable cause.

Plaintiff failed to show that Jimenez (or any officer) presented false information at the preliminary examination to establish probable cause. Summary judgment on Count IV is granted.

### D.    Municipal Liability (Count VII)

Plaintiff bases his claim of §1983 liability against the City of Detroit on his assertion that he endured Fourth Amendment violations by the Defendant officers

because of the City of Detroit's failure to train and supervise them.

"To prevail in a §1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)(*citing Monell v Dep't of Social Services*, 436 U.S. 658, 694 (1978), *cert. den.,* 126 S. Ct. 338 (2005)). "[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *Canton v Harris*, 489 U.S. 378, 389 (1989)(*quoting Monell*, 436 U.S. at 694). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id* at 385. A municipality cannot be held vicariously liable under §1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 691.

Because Plaintiff failed to establish that the Defendant officers violated his Fourth Amendment rights, he failed to establish that the City of Detroit's policies or customs were the moving force behind his alleged injuries. Therefore, Defendant City of Detroit's motion for summary judgment is granted.

## V.     CONCLUSION

Defendants' Motion is **GRANTED** in its entirety.  Judgment will enter in favor of

them.

**IT IS ORDERED.**


/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  October 22, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 22, 2007.

s/Linda Vertriest
Deputy Clerk